**ALBERTA PORK PRODUCERS' MAR-KETING BOARD, et al., Plaintiffs,**

**The Canadian Meat Council, and its Members, Plaintiffs–Intervenors,**

v.

**UNITED STATES, Defendant,**

**National Pork Producers Council and Wilson Foods Corporation, Defendants–Intervenors.**

**Court No. 85–09–01257.**

United States Court of International Trade.

March 22, 1988.

Cameron, Hornbostel & Butterman, William K. Ince and Caren Z. Turner, Washington, D.C., for plaintiffs.

Arnold & Porter, Alan O. Sykes, Lawrence A. Schneider, Douglas A. Dworkin, and David E. Green, Washington, D.C., for plaintiffs-intervenors.

John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, U.S. Dept. of Justice, Elizabeth C. Seastrum, Douglas Riggs, Gen. Counsel, U.S. Dept. of Commerce, Lisa B. Koteen, Lyn M. Schlitt, Gen. Counsel, Intern. Trade Com'n, James A. Toupin, Asst. Gen. Counsel, Randi S. Field, Washington, D.C., for defendant.

Thompson, Hine & Flory, Mark Roy Sandstrom, Kathryn A. Dobbs, Rafael Alberto Madan, Washington, D.C., and Martin Richard O'Farrell, for defendants-intervenors.

## MEMORANDUM OPINION AND ORDER

DiCARLO, Judge:

Plaintiffs brought this action challenging the final affirmative subsidy determination by the United States Department of Commerce, International Trade Administration (Commerce) in *Final Affirmative Countervailing Duty Determination; Live Swine and Fresh, Chilled and Frozen Pork Products from Canada,* 50 Fed.Reg. 25,-097 (June 17, 1985), and the final affirmative injury determination by the United States International Trade Commission (Commission) in *Live Swine and Pork From Canada,* Inv. No. 701–TA–224, USITC Pub. 1733 (1985). In an opinion on plaintiffs' motion for a judgment upon the agency record under Rule 56.1 of the Rules of this Court, the action was remanded to Commerce for recalculation of the countervailable portion of the subsidy received by Canadian hog farmers under the Ontario Farm Tax Reduction Program and to the Commission for reevaluation of evidence concerning price elasticities relied on in reaching the final affirmative determination of injury. *See Alberta Pork Produc-*

*ers' Mktg. Bd. v. United States,* 11 CIT ——, 669 F.Supp. 445 (1987).

Plaintiffs do not contest Commerce's remand results. The Court affirms the final affirmative countervailing duty determination as changed by Commerce's recalculations on remand.

Plaintiffs do contest the Commission's remand results. After review of those results, and all arguments and responses thereto, the Court finds the Commission's final affirmative injury determination is supported by substantial evidence and is in accordance with law. The Court affirms the Commission's determination. The action is dismissed.

### Discussion

In its earlier opinion, the Court found the Commission's determination that the domestic industry producing live swine is suffering material injury to be supported by substantial evidence and according to law. The Court reserved judgment, however, on the question of whether the Commission's determination that such domestic industry has been materially injured by reason of Canadian imports is supported by substantial evidence.

The Commission is required by statute to determine whether the material injury to the domestic industry is "by reason of" subsidized imports. 19 U.S.C. § 1671d(b)(1) (1982 & Supp. IV 1986). In reaching this determination regarding causation, the Commission is directed by statute to consider among other factors:

(i) the volume of imports of the merchandise which is the subject of the investigation,

(ii) the effect of imports of that merchandise on prices in the United States for like products, and

(iii) the impact of imports of such merchandise on domestic producers of like products.

19 U.S.C. § 1677(7)(B) (1982).

The Commission in this case reached an affirmative causation determination, in part by relying on price elasticity estimates to evaluate the effect on domestic swine prices of changes in the Canadian share of

the integrated United States/Canadian live swine market. Under the statutory framework, the Commission is directed, with respect to evaluation of price effect, to consider whether: "(I) there has been significant price undercutting by the imported merchandise as compared with the price of like products of the United States, and (II) the effect of imports of such merchandise otherwise depresses prices to a significant degree or prevents price increases, which otherwise would have occurred, to a significant degree." 19 U.S.C. § 1677(7)(C)(ii) (1982).

■ Elasticity estimates are used to gauge the effect that changes in supply of a given product have upon prices for that product. The price elasticity of demand is defined as the percentage change in the quantity of a good for a 1% change in the price of the good, holding the prices of related goods and other factors constant. The coefficient of price flexibility is defined as the percentage change in the price of a good for a 1% change in quantity, holding the quantities of related goods constant.

The Court concluded that it could not properly assess the Commission's affirmative causation determination because a review of the record revealed an ambiguity concerning the input data used in developing the price elasticity estimates. Evidence in the record indicated that the price elasticity estimates used in a staff economist's report, relied on by the Commission, may have been derived from changes in supply of live swine and pork imports. The Court found it inappropriate for the Commission to use price elasticity estimates derived from changes in the supply of pork and live swine in determining whether injury to the live swine industry is by reason of subsidized imports of live swine, since the Commission had determined live swine and unprocessed pork to be different products. *Alberta Pork,* 11 CIT at ——, 669 F.Supp. at 404.

The Court remanded the action for the Commission to determine if the price flexibilities used in the staff economist's summary report were derived from data on only live swine. If the price flexibilities were found not to be derived from only live swine, the Commission was directed to reconsider the effect of increased Canadian imports on United States live swine prices with respect to its affirmative causation determination.

On remand the Commission found that the price flexibilities were not derived from data on only live swine. *Live Swine and Pork From Canada,* Inv. No. 701–TA–224 (Final) (Remand), 2–3 (Sept. 21, 1987) [hereinafter Commission's Remand]. The Commission acknowledged that the use of data aggregating pork and swine imports introduces a bias into the econometric estimates. The Commission determined, however, that the elasticity estimates on record are the best information available of such nature within the meaning of 19 U.S.C. § 1677e(b) (1982). The Commission again used the econometric estimates since it was able to quantify the bias and arrive at a range of unbiased price flexibilities.

The range of unbiased price flexibilities relied on for remand is 0.97 to 1.98 whereas the biased price flexibilities used in the Commission's final determination were 1.00 to 2.00. The Commission recalculated the impact on swine prices and gross revenues of United States swine growers caused by changes in the Canadian share of the integrated United States/Canadian live swine market. The results of the recalculations, using the maximum biases, show:

that the Canadian share fell in 1983 and caused swine prices to be approximately $.18 to $.38 per hundredweight higher than the prices would have been without the decrease in the Canadian share. Further, the Canadian share rose in 1984 and caused swine prices to be approximately $.62 to $1.26 per hundredweight lower than the prices would have been without the increase in the Canadian share. Based on [United States Department of Agriculture] forecasts, the Commission projected an increase in the Canadian market share of live swine for 1985 which would cause swine prices to be approximately $.17 to $.36 per hundredweight lower than the prices would have been without the increase in the Canadi-

an share during 1985. Thus, the total increase in the Canadian share during 1984 and 1985 caused an estimated decline in swine prices from $.79 to $1.62. Commission's Remand at 5–6. The Commission similarly recalculated the aggregate impact on gross revenues of all United States growers as a result of changes in the Canadian share of the live swine market, estimating gross revenues were higher by approximately $34 million to $73 million in 1983, and lower by approximately $114 million to $232 million in 1984, and projecting lower gross revenues by approximately $30 million to $64 million for 1985. *Id.* at 6.

With respect to the price elasticity estimates, the Commission concluded: "The estimates of the maximum biases are so small and the resulting changes in the figures caused by the recalculations are so small that these recalculated figures in conjunction with other factors we discussed in the final opinion, compels a determination that the domestic swine industry in the United States is materially injured by reason of subsidized imports." *Id.*

The Commission stressed that its pricing analysis is not based solely on the unbiased price elasticity estimates but also on the published pricing data, stating: "The rapid increase in the Canadian share of the market by subsidized imports has had a disruptive effect on the U.S. market that, combined with the depressing effect that this increased share had on swine prices as reflected in the published pricing data, lead us to conclude that the domestic industry has been materially injured by reason of the subject imports." *Id.* at 7. The Commission concluded that, even in the absence of the data derived from using price elasticity estimates, the published pricing data and the other factors discussed in the final opinion support the determination that an industry in the United States is materially injured by reason of imports of live swine from Canada.

Plaintiffs challenge the Commission's remand determination, raising several arguments.

(1)

■ Plaintiffs first contend that the Commission's affirmative redetermination is in error because it exceeds the scope of the remand. Asserting that the *Alberta Pork* opinion specifically limited the Commission's reconsideration to evidence concerning the price elasticity estimates, plaintiffs argue the Commission exceeded scope of the remand ordered because the Commission also discussed and relied on other grounds to support the affirmative causation finding.

The Court remanded the action to the Commission because it found reason to believe the Commission had relied on data which was, in the Court's view, improperly derived. The Commission was directed to determine if the suspected error had actually occurred. Once the Commission concluded that the data relied on was improperly derived, the Court expected the Commission to reevaluate its prior affirmative determination regarding causation.

Through its order, the Court sought to focus the Commission's reconsideration of causation on the pricing question so as to avoid recitation of evidence already discussed in detail in the final determination. As the Court stated in *Alberta Pork:*

> If these price flexibilities are not derived from data on live swine only, the Commission must reconsider its determination with respect to the effect of increased Canadian imports on United States live swine prices. The Commission may either obtain new data for its price elasticity estimates or identify and explain what data in the present record supports the redetermination.

11 CIT at ——, 669 F.Supp. at 464.

Contrary to plaintiffs' assertion, the Court did not intend to handcuff the Commission to an assessment of only the econometric estimates. The Commission was free to rely on evidence already on record and discussed in the final determination when making its redetermination. The Court finds that the results reached by the Commission's majority on remand are in conformity with the remand order.

### (2)

Plaintiffs say one of the two commissioners voting in the affirmative on remand, in his additional views, rejected the evidence concerning price elasticities as a means of estimating the amount of injury resulting from imports.

The Court need not decide whether conflicting statements made as additional views can be considered as a rejection of support for the Commission's majority decision. In this case, the alleged repudiation did not occur. Before discussing the price elasticity analysis in his additional views, the commissioner at issue stated: "I concur with the explanation of price elasticities provided in the Commission's majority remand views. I wish only to add certain general comments." Commission's Remand at 12.

■ The commissioner stated in a footnote: "The complexities of real markets, even for a relatively fungible product such as live swine, make me view quantifications based on simplified models with extreme caution. I specifically reject the notion that such quantifications are a reasonable basis for estimating the amount of injury resulting from imports." *Id.* at 13 n. 12. In context, the commissioner was explaining that the data developed from the price elasticity estimates was merely illustrative of the conclusion that prices were extremely responsive to changes in supply and was not intended to be a quantification of the actual impact of Canadian live swine imports on United States live swine prices or domestic growers incomes. *Id.* at 12–13. This comment is not a repudiation of the price elasticity analysis, but rather the proper recognition that these econometric estimates are not a substitute for the overall assessment required by the statute, especially concerning impact of imports on the domestic producers of like products under 19 U.S.C. § 1677(7)(B)(iii) (1982). *See USX Corp. v. United States,* 12 CIT ——, 682 F.Supp. 60, 70 (1988).

### (3)

■ Plaintiffs contend the Commission erred by revising the existing price elastici- ty estimates developed from input data which combined pork and swine imports, claiming other data was readily available on imports of only live swine from which new, better price elasticity estimates could have been created.

The Commission determined that "the econometric estimates in the record are the best information of this nature available," within the meaning of 19 U.S.C. § 1677e(b) (1982). That section provides:

> In making their determinations under this subtitle, the ... Commission shall, whenever a party or any other person refuses or is unable to produce information requested in a timely manner and in the form required, or otherwise significantly impedes an investigation, use the best information otherwise available.

19 U.S.C. § 1677e(b) (1982). As our appellate court noted in *Atlantic Sugar, Ltd. v. United States,* 2 Fed.Cir. (T) 130, 134, 744 F.2d 1556, 1561 (C.A.Fed.1984), "[n]othing in the best information rule or its legislative history defines a standard of investigative thoroughness."

The Commission concluded that the econometric estimates on record were the best information available based on its finding that the bias, created from these estimates having been derived from data which combined live swine and pork, could be quantified and that such bias was insubstantial. An Office of Economics memorandum relied upon by the Commission explains in detail the calculations performed that isolated the bias preexisting in the econometric estimates on record. *See* Remand R., List No. 1A, Doc. 124. The bias calculations are based on traditional mathematical formulas and show that the bias in all the estimates on record was small.

In light of the limited time the Commission was given to conduct its remand, and the reasons for adjusting the existing econometric estimates rather than seeking new estimates derived from data on only live swine, the Court finds the Commission's determination that the econometric estimates on record are the best information of such nature available is reasonable.

**(4)**

■ Plaintiffs assail the overall legitimacy of using the price elasticity estimates, arguing that the estimates on record do not take into account a sufficient number of variables, improperly treat swine imports as an exogenous variable (meaning increases in imports can only result in lower not higher United States swine prices), erroneously assume United States supply of swine is fixed over the period of investigation, and are based on stale (old) input data.

■ The Court finds that these arguments could have been raised by plaintiffs before the decision in *Alberta Pork*, along with its other attacks on the validity of the price elasticity estimates. After considering all the challenges plaintiffs made earlier concerning the estimates, the Court approved them, except for the potential error in the input data which appeared to combine pork imports with live swine imports. *Alberta Pork*, 11 CIT at ——, 669 F.Supp. at 463. The Court finds the attacks now made against the econometric estimates on record are foreclosed by *Alberta Pork* and hence beyond the scope of the remand ordered.

**(5)**

■ Plaintiffs contend the affirmative causation determination is not supported by substantial evidence, claiming the Commission relied on factors discussed in its final determination which were found in *Alberta Pork* to provide insubstantial evidence in support of the determination.

In *Alberta Pork*, the Court noted that the Commission in reaching its final affirmative determination specifically stated its reliance on the documented evidence developed from the price flexibilities, which the Court believed to be erroneously derived. Once the Court concluded a significant error may have been committed, it could not find the other evidence of record to provide substantial evidence since it did not know how the Commission might view such evidence on reconsideration should the data developed from the corrected price elasticity estimates be different from that relied on earlier. This is the reason the Court in *Alberta Pork* was not persuaded the Commission's determination was supported by substantial evidence absent the price elasticity estimates. The other evidence was not characterized as insubstantial or defective.

The Court in *Alberta Pork* specifically found there to be "substantial evidence on the record to support the Commission's conclusion that the volume of Canadian imports of live swine is significant." 11 CIT at ——, 669 F.Supp. at 461. Volume of imports is one of the three statutory factors the Commission is directed to consider in determining whether the injury to the domestic industry is by reason of imports. *See* 19 U.S.C. § 1677(7)(B)(i) (1982).

**(6)**

Plaintiffs point to the conclusions reached by the Commission remand concerning the published pricing data and argue that such data "does not necessarily prove" that United States prices for live swine decreased in response to increased imports. Plaintiffs' Brief in Response to Remand at 15. To support their position, plaintiffs isolate inconsistencies in the data which detract from the overall conclusion that United States prices for live swine declined when Canadian imports of live swine increased.

Some inconsistencies do exist, in that for certain years when Canadian imports increased United States prices also increased. The Court must only determine, however, whether the agency's findings are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Federal Trade Comm'n v. Indiana Fed'n of Dentists*, 476 U.S. 447, 454, 106 S.Ct. 2009, 2015, 90 L.Ed. 2d 445 (1986) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951)). The Court finds the published pricing data is reasonably adequate to support the Commission's conclusion that in general when Canadian live swine imports increased there was a corresponding decrease in United States prices for live swine.

The Court also finds that the published pricing data coupled with the data developed from the reconstructed price elasticity estimates is reasonably adequate to support the Commission's determination that Canadian live swine imports have had a significant depressing effect on United States prices for live swine. Having accepted the Commission's findings concerning volume of imports and price effect, the Court holds the Commission's determination that the domestic industry has been materially injured by reason of the subject imports is supported by substantial evidence. The Commission's affirmative causation determination is affirmed.

### Conclusion

The final affirmative subsidy determination is affirmed as changed by Commerce's remand recalculations. The final affirmative injury determination is found to be supported by substantial evidence and in accordance with law after review of the Commission's remand results. The action is dismissed. Judgment will be entered accordingly.