**ALHAMBRA FOUNDRY CO., LTD., et al., Plaintiffs,**

v.

**UNITED STATES, Defendant,**

**and**

**Kejriwal Steel and Iron Works, et al., Defendant–Intervenors.**

**Court No. 86–04–00484.**

United States Court of
International Trade.

April 27, 1988.

Collier, Shannon, Rill & Scott, Paul C. Rosenthal and Carol A. Mitchell, Washington, D.C., for plaintiffs.

John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, U.S. Dept. of Justice, Platte B. Moring, III, U.S. Dept. of Commerce, Office of the Deputy Chief Counsel for Import Admin., Washington, D.C., Duane W. Layton, for defendant.

Kaplan, Russin & Vecchi (Dennis James, Jr.), Washington, D.C., for defendant-intervenors.

## MEMORANDUM OPINION AND ORDER

DiCARLO, Judge:

The International Trade Administration of the United States Department of Commerce (Commerce) investigated four exporters of iron construction castings from India and determined that one exporter was dumping merchandise, that one exporter was not dumping, and that two other exporters were dumping at only *de minimis* levels. *Certain Iron Construction Castings from India; Final Determination of Sales at Less Than Fair Value,* 51 Fed.Reg. 9,486 (Mar. 19, 1986). The Indian exporter found to be dumping challenged that finding in *Serampore Indus. v. United States,* 11 CIT ——, 675 F.Supp. 1354 (1987). In this action United States producers of iron construction castings challenge Commerce's other findings of zero and *de minimis* dumping margins.

This Court has jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2) (Supp. IV 1986) and 28 U.S.C. § 1581(c) (1982). Plaintiffs move under Rule 56.1 of the Rules of this Court for judgment on the agency record and ask the Court to remand to Commerce for certain recalculations. Commerce concedes that it erred in making some of the challenged calculations and asks the Court to remand in part. The Court affirms in part and remands in part.

### Background

The Municipal Castings Fair Trade Council and fifteen domestic producers of iron construction castings filed a petition with Commerce under 19 U.S.C. § 1673a(b) (1982) and 19 C.F.R. § 353.36 (1985), alleging that iron construction castings from India are being sold in the United States at less than fair value, and that these imports are materially injuring or threatening material injury to a United States industry. Commerce selected four Indian exporters of iron construction castings to be the respondents in this action: RSI India Pvt. Ltd. (RSI), Kejriwal Iron & Steel Works (Kejriwal), Kajaria Castings Pvt. Ltd. (Kajaria), and Serampore Industries Pvt. Ltd. (Serampore). *Iron Construction Castings From India: Preliminary Determination of Sales at Less Than Fair Value,* 50 Fed.Reg. 43,595, 43,595–96 (Oct. 28, 1985).

In its final determination of sales at less than fair value, Commerce found a zero percent dumping margin for RSI, a 0.39 percent margin for Kejriwal, and a 0.03 percent margin for Kajaria. 51 Fed.Reg. at 9,490. In the final determination and subsequent antidumping duty order, Commerce excluded the results for Kejriwal and Kajaria as having only *de minimis* margins of dumping. *Id.; Antidumping Duty Order; Iron Construction Castings From India,* 51 Fed.Reg. 17,221 (May 9, 1986). No antidumping duties were assessed against RSI, Kejriwal or Kajaria. The domestic producers filed an action in this Court to challenge Commerce's results for RSI, Kejriwal and Kajaria. Complaint a at 4.

### Scope of Review

In reviewing final Commerce determinations in antidumping duty investigations, the Court will hold unlawful those determinations found "to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1982); *Luciano Pisoni Fabbrica Accessori Instrumenti Musicali v. United States,* 837 F.2d 465, 467 (Fed. Cir.1988). Under the substantial evidence

standard for review of agency determinations, the Court will affirm the agency's findings if they are supported in the record by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Federal Trade Comm'n v. Indiana Fed'n of Dentists,* 476 U.S. 447, 454, 106 S.Ct. 2009, 2015, 90 L.Ed.2d 445 (1986); *Atlantic Sugar, Ltd. v. United States,* 2 Fed.Cir. (T) 130, 136, 744 F.2d 1556, 1562 (1984). The Court must also accord substantial weight to an agency's interpretation of a statute it administers. *American Lamb Co. v. United States,* 4 Fed.Cir. (T) 47, 54, 785 F.2d 994, 1001 (1986). An agency's statutory interpretation need not be the only reasonable interpretation, or the one which the Court views as the most reasonable. *ICC Indus. v. United States,* 812 F.2d 694, 699 (Fed.Cir. 1987); *Consumer Prods. Div., SCM Corp. v. Silver Reed America,* 3 Fed.Cir. (T) 83, 90, 753 F.2d 1033, 1039 (1985). However, "[t]he traditional deference courts pay to agency interpretation is not to be applied to alter the clearly expressed intent of Congress." *Board of Governors of the Fed. Reserve Sys. v. Dimension Fin. Corp.,* 474 U.S. 361, 368, 106 S.Ct. 681, 686, 88 L.Ed.2d 691 (1986).

### Discussion

The domestic producers assert that Commerce's final antidumping determination includes numerous factual and legal errors which had the effect of substantially understating the weighted-average dumping margins for the companies investigated. The domestic producers thus contend that Commerce's final determination violates the antidumping laws and regulations and is unsupported by substantial evidence on the record.

### 1. CONSTRUCTED FOREIGN MARKET VALUE CALCULATIONS

When Commerce is unable to determine the foreign market value (FMV) of imported merchandise under 19 U.S.C. § 1677b(a)(1)(A) (1982), Congress allows Commerce to construct a FMV to compare to the United States price (USP) and thus determine whether merchandise is being dumped in the United States. 19 U.S.C. § 1677b(a)(2) (1982). Congress has directed that Commerce construct FMV by adding the costs of materials, fabrication or processing, general expenses, profit, and the cost of containers for shipping to the United States. 19 U.S.C. § 1677b(e)(1) (1982 & Supp. III 1985); *Timken Co. v. United States,* 11 CIT —, 673 F.Supp. 495, 506 (1987). The domestic producers conceded at oral argument that Commerce was correct in using a constructed FMV. However, they challenge Commerce's calculations of (a) the cost of materials, (b) general expenses, and (c) profit.

#### a. Cost of Materials

The record shows that in September of 1983, Indian pig iron prices increased significantly as compared to the prices for pig iron from other nations, R. 1345–46, and that the Indian government used an International Price Reimbursement Scheme (IPRS), a system of payments to offset the difference between the cost of pig iron in India and an ostensible world price for pig iron. This Court recently reviewed the IPRS program for pig iron in the context of countervailing duties. *RSI (India) Pvt. Ltd. v. United States,* 12 CIT —, 687 F.Supp. 605 (1988). *See also Sawhill Tubular Div. Cyclops Corp. v. United States,* 11 CIT —, 666 F.Supp. 1550, 1551 (1987) (IPRS payments for steel).

The domestic producers assert that Commerce's constructed foreign market value calculations improperly failed to exclude IPRS payments. Commerce and the Indian exporters reply that the domestic producers did not raise this issue during the administrative proceedings and thus argue that the Court should apply the doctrine of exhaustion of administrative remedies and not consider this issue.

■ Exhaustion of administrative remedies is an absolute requirement in the Court of International Trade only in classification actions, with a limited exception for preimportation classification rulings. *See* 28 U.S.C. § 2637 (1982). In all other civil actions before this Court, Congress

has directed only that "the Court of International Trade shall, *where appropriate,* require the exhaustion of administrative remedies." 28 U.S.C. § 2637(d) (1982) (emphasis added). The judicial determination of whether to require exhaustion of remedies in non-classification actions is thus individual to the circumstances of each case, with each exercise of judicial discretion in not requiring litigants to exhaust administrative remedies characterized as "an exception to the doctrine of exhaustion." *See Timken Co. v. United States,* 10 CIT —, 630 F.Supp. 1327, 1334 (1986).

■ The Court of International Trade has found exceptions to the exhaustion doctrine when requiring exhaustion would be futile or an insistence on a useless formality. *See, e.g., Rhone Poulenc, S.A. v. United States,* 7 CIT 133, 135, 583 F.Supp. 607, 610 (1984). The Court has also declined to require that plaintiffs pursue channels which could not lead to relief or pursue "manifestly inadequate" remedies. *United States Cane Sugar Refiners' Ass'n v. Block,* 3 CIT 196, 201, 544 F.Supp. 883, 887, *aff'd,* 69 CCPA 172, 683 F.2d 399 (1982); *Luggage and Leather Goods Mfrs. of Am. v. United States,* 7 CIT 258, 266–67, 588 F.Supp. 1413, 1420–21 (1984). The "manifestly inadequate" standard is a limited one, however, because "mere allegations of financial harm, or assertions that an agency failed to follow a statute, do not make the remedy established by Congress manifestly inadequate." *National Corn Growers Ass'n v. Baker,* 840 F.2d 1547, 1557 (Fed.Cir.1988) (quoting *Miller & Co. v. United States,* 824 F.2d 961 (Fed.Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988)).

The Court of International Trade has also recognized an exception to the exhaustion doctrine where judicial interpretations of existing law are made after the contested administrative determination was published, and the new interpretation might have materially altered the agency result. *See Timken Co. v. United States,* 10 CIT —, 630 F.Supp. 1327, 1334 (1986); *Rhone Poulenc, S.A. v. United States,* 7 CIT 133, 134–35, 583 F.Supp. 607, 609–10 (1984).

The Court has also found it appropriate to consider claims not raised before the agency where Commerce did not adhere to controlling judicial precedents and where the plaintiff's arguments were based on facts available only in the confidential administrative record and the plaintiff was not timely informed of the deadline for access to the confidential record of business proprietary information. *Philipp Bros., Inc. v. United States,* 10 CIT —, 630 F.Supp. 1317, 1320 (1986).

■ The defendant notes that while the domestic producers inquired about the IPRS program and the Indian exporters' raw material costs, the domestic producers never voiced any concern about whether the constructed value statute prohibited the deduction of the IPRS payments from the Indian exporters' raw material costs. The domestic producers knew at an early stage of the administrative proceedings that the Indian companies reported their pig iron costs net of IPRS payments, R. 1019, 1040–41, 1048–49, 1070, 1270. Prior to the administrative hearing, the domestic producers wrote to Commerce discussing the IPRS in general terms, but did not comment on the relationship between the constructed value statute and the IPRS. R. 939, 993–94, 1163–64. The domestic producers claim that they did not learn that Commerce used IPRS payments to reduce the cost of materials in the final determination until the cost verification exhibits and complete final constructed value calculations were filed on February 10 and March 10, 1987 as amendments to the administrative record before this Court. *Plaintiffs' Memorandum in Response to Question re Exhaustion of Administrative Remedies,* at 2, n. 1.

In February of 1986, Commerce issued its verification report on each respondent's cost of production. With reference to IPRS, Commerce outlined the application and payment procedures:

Export manufacturers apply for the IPRS refund furnishing proof of both finished goods shipment and pig iron purchases.... [R]eimbursement occurs five

to six weeks after filing if the application is complete.

R. 1347. Although the report verified that IPRS payments were made after exportation of the subject merchandise, the domestic producers did not comment at the hearing or in their post-hearing brief on the IPRS issue presently before the Court.

The domestic producers principal concern following the release of the verification report was the relationship between the IPRS and the Indian tax rebate program known as Cash Compensatory Support (CCS). *See* Conf.R. 1302, 1438. Commerce thus responded only to this aspect of the IPRS payments issue in the final determination. 51 Fed.Reg. at 9,488.

Although the domestic producers consistently argued that the Indian exporters' material cost figures were too low, they never argued that IPRS payments should not be taken into account in constructing FMV. The domestic producers state that "[d]espite repeated expressions of concern about [Commerce's] treatment of the IPRS rebate in calculating [the Indian exporters'] constructed value, [Commerce's] final calculations reflected material costs net of IPRS." *Plaintiffs' Memorandum in Support of Motion for Judgment on the Administrative Record*, at 17. The Indian exporters correctly observe that the domestic producers did not express concern about "treatment of the IPRS rebates" or argue that deducting IPRS was inappropriate, unreasonable, or not in accordance with law. For example, after Kajaria explained that its reported raw material costs were "derived on the basis of actual charges paid for scrap, pig iron, etc. and the deduction of the IPRS factor from the raw material cost," R. 1041, the domestic producers commented that the "reported raw material costs made even less sense after taking the IPRS factor into account." R. 1163. However, at no time during the administrative proceedings did the domestic producers argue that IPRS payments should not be taken into account. Commerce did not have an opportunity to comment on the IPRS issue that the domestic producers now raise because it was not first raised during the administrative proceedings. In

*Kokusai Elec. Co. v. United States,* 10 CIT ——, 632 F.Supp. 23, 28 (1986), this Court stated that "a reviewing court would usurp the function of the agency if it were to set aside an administrative determination upon a ground not previously presented, thereby depriving the agency of a chance to consider the matter." To the extent that the domestic producers could have raised issues concerning the IPRS payments during the course of the administrative proceedings, the Court finds it appropriate to require the exhaustion of administrative remedies.

The Court does not exclude all of the domestic producers' arguments, however, because the domestic producers also point to a decision of this Court, rendered subsequent to Commerce's final determination, which offered an alternative treatment of the IPRS payments at issue in this case. In *Sawhill Tubular Div. Cyclops Corp. v. United States,* 11 CIT ——, 666 F.Supp. 1550 (1987), the court found that Commerce acted reasonably and within the law to account for IPRS payments as circumstance of sale adjustment to FMV. *Sawhill* was a challenge to the final affirmative antidumping duty determination in *Certain Welded Carbon Steel Standard Pipe and Tube From India,* 51 Fed.Reg. 9,089 (Mar. 17, 1986), published only two days before Commerce's final determination in this case. In the *Sawhill* determination, Commerce made a circumstance of sale adjustment to FMV pursuant to 19 C.F.R. § 353.15 for IPRS payments. Specifically, Commerce deducted IPRS payments from FMV in the amount of the rebate payment (i.e., the difference between the cost of steel in India and the international price of steel).

The domestic producers argue that Commerce's treatment of IPRS rebates as reducing the cost of materials in the constructed FMV calculations should not be upheld in this case because it is inconsistent with Commerce's treatment of IPRS rebates in *Sawhill* as a circumstance of sale adjustment.

■ Commerce argues that its adjustment to material costs for IPRS rebates is consistent with the circumstance of sale adjustment made in *Sawhill* because that determination involved a price to price comparison between pipe and tube sold in India and that sold in the United States, while the Indian exporters in this case have insufficient sales in their home or third country markets to serve as a basis for comparing FMV with United States price.

The domestic producers reply that this alleged distinction is insupportable because Commerce has made circumstance of sale adjustments in both price and constructed FMV analyses, *see, e.g., Cellular Mobile Telephones and Subassemblies from Japan; Final Determination of Sales at Less Than Fair Value,* 50 Fed.Reg. 45,447 (Oct. 31, 1985); *Certain Electric Motors from Japan; Final Results of Administrative Review of Antidumping Duty Order,* 49 Fed.Reg. 32,627 (Aug. 15, 1984), and because Commerce's authority to make circumstance of sale adjustments in cases involving constructed FMV analyses was upheld by this Court in *Timken Co. v. United States,* 11 CIT —, —, 673 F.Supp. 495, 507 (1987), which found that because FMV is defined under 19 U.S.C. § 1677b(a)(2) to include constructed value, the differences in circumstances of sale adjustment in 19 U.S.C. § 1677b(a)(4), "by the literal language of the statute, must be applied to constructed value as well as to price-based foreign market value."

The Court agrees with the domestic producers that Commerce's treatment of IPRS payments has been inconsistent from the practice approved in *Sawhill.* An agency must either conform itself to its prior decisions or explain the reasons for its departure. *Secretary of Agric. v. United States,* 347 U.S. 645, 653–54, 74 S.Ct. 826, 831–32, 98 L.Ed. 1015 (1954); *Mitchell Energy Corp. v. Federal Energy Regulatory Comm'n,* 580 F.2d 763, 765 (5th Cir.1978), *cert. denied,* 456 U.S. 974, 102 S.Ct. 2237, 72 L.Ed.2d 847 (1982). The Court remands to Commerce for an explanation of why the practice in this case is different from *Sawhill,* or, in the alternative, recalculation of the IPRS rebates as a circumstance of sale adjustment to conform to the practice approved in *Sawhill. See Plaintiffs' Reply Memorandum* at 5–6.

b. *General Sales and Administrative Expenses*

■ The domestic producers initially claimed that Commerce improperly allocated RSI's general sales and administrative expenses on the basis of the number of RSI employees. The domestic producers acknowledge in their reply brief that their assignment of error on this point was based on a misreading of the administrative record. The domestic producers now agree that Commerce allocated general and administrative expenses on the basis of office salaries, and not the number of employees. However, the domestic producers still argue that Commerce simply ignored the office salaries paid to employees common to all three of RSI's divisions.

Since RSI makes and sells more than just iron construction castings, Commerce could not allocate all of the company's general and administrative expenses to the division that produces the products under investigation. In its final determination, Commerce allocated general and administrative expenses among RSI's Import Division, Applied Power and Engineering Division, and Foundry and Export Division on the basis of office salaries exclusive to any one division. 51 Fed.Reg. at 9,488–89. The record reflects further that the salaries of employees who worked for all three divisions were excluded from the calculation of the total office salaries for a particular division, but were included in the calculation of RSI's total general and administrative expenses. Conf.R.Doc. 68 at B. Commerce thus determined the total office salaries for each division, and then allocated a portion of the general expense of RSI to the Foundry Division based upon its proportion of RSI's total office salaries. Conf.R. 1113–14. The Court finds that Commerce's methodology in this investigation is supported by substantial evidence and is in accordance with law.

### c. *Profit*

■ The domestic producers contend that Commerce improperly used theoretical, rather than actual, profit figures in its constructed value calculations. The domestic producers argue that the Congress has required Commerce to use only actual profit figures unless the amount of an investigated exporter's profit is below eight percent.

The antidumping laws of the United States instruct Commerce to calculate constructed foreign market value by including

> an amount for general expenses and profit equal to that *usually reflected* in sales of merchandise of the same general class or kind as the merchandise under consideration which are made by producers in the country of exportation, in the usual commercial quantities and in the ordinary course of trade, except that—
>
> .     .     .     .     .
>
> the amount for profit shall not be less than 8 percent of the sum of such general expenses and cost....

19 U.S.C. § 1677b(e)(1)(B)(ii) (1982 & Supp. IV 1986) (emphasis added). *See also* 19 C.F.R. § 353.6(a) (1987).

In its construction of FMV, Commerce used only the statutory minimum of 8% to represent the amount of profit. Commerce's final determination states that "[b]ecause the respondent companies do not have viable home market or third country market sales, the profit used in the constructed [foreign market] value for all four companies was the statutory minimum 8 percent of the total manufacturing cost plus sales, general, and administrative [SG & A] expenses." 51 Fed.Reg. at 9,488. Commerce states that this decision was reasonable because none of the exporters had sufficient sales within India or to any third country to permit a reasonable determination of home market or third country profit.

The domestic producers argue that Commerce should have followed *Antidumping—Strontium Nitrate From Italy; Final Determination of Sales at Less Than Fair Value*, 46 Fed.Reg. 25,496 (May 7, 1981), which announced three factors that Commerce would look to in order to calculate profit for purposes of constructed value in future cases:

> [1] profits on home market sales of comparable merchandise by the individual producer under investigation;
>
> [2] profits on third country sales of comparable merchandise by the individual producer under investigation, to the extent such information is readily available; or if not,
>
> [3] profits on home market sales of comparable merchandise by the industry.

46 Fed.Reg. at 25,497.

The record confirms that Commerce verified that Kajaria and Serampore had no home market or third country sales for the products under investigation and no home market or third country sales of similar merchandise during the period of investigation R. 1243, 1330; Conf.R. 994, 1073, 1160, 1313. The record also shows that Commerce verified that Kejriwal and RSI had virtually no home market or third country sales for the products under investigation and no home market or third country sales of similar merchandise during the period of investigation. R. 1264, 1285; Conf.R. 1094, 1115, 1192, 1372. The record thus provides substantial evidence to support Commerce's determination that it could not use either of the first two elements announced in *Strontium Nitrate From Italy.*

The Court also finds that Commerce acted reasonably in not resorting to the industry profits option announced in *Strontium Nitrate From Italy*, the "profits on home market sales of comparable merchandise by the industry." 46 Fed.Reg. at 25,497.

A finding of dumping is a determination that a specific company is selling goods below cost or at a price below that charged in the domestic market. A company can avoid sales at less than fair value by raising its prices, which in the absence of rising costs of input, will raise that company's profit margin. Use of another company's profits to determine whether an investigated company is dumping may send the wrong message to the investigated company. Application of an average of several

producers' profits would also tend to deprive any single producer of knowledge of the total amount of its particular FMV and thus deprive it of an ability to adjust its prices accordingly to ensure that it was not selling in the United States at less than fair value.

The domestic producers also argue that Commerce should have used the percentage of profit that each company made in the United States to represent the amount of profit that each company might have made on sales in the home market or to a third country. The domestic producers assert that Commerce's non-use of United States profit figures is inconsistent with Commerce's use of general selling and administrative expenses incurred on United States sales of the merchandise under consideration as a surrogate for home market general selling and administrative expenses. Conf.R.Doc. 63.

Defendant responds that it would be patently illogical to use United States profits in determining United States price and then use the same profits in determining FMV, because profit is usually the only variable that will generally determine whether a foreign producer is selling a product in the United States at less than fair value. According to the defendant, a product will generally cost the same to make no matter where it is ultimately sold, and if two identical items are produced on the same assembly line, their material and fabrication costs, their direct labor, storage, and factory overhead costs, and other general and administrative costs will generally be the same absent any diminishing marginal returns in production, regardless of the fact that the items are destined for different markets. The costs that will vary according to market destination are "circumstances of sale," for which Commerce must make a circumstances of sale adjustment. 19 U.S.C. § 1677b(a)(4)(B) (1982). Profit is thus a critical factor in determining whether dumping exists. If the same profit figure is used for both the determination of the United States price and FMV, then it is likely that the constructed FMV will be identical to the selling price in the United States. This would result in no dumping

margins, which would not accomplish the purposes of the antidumping laws. *Defendant's Memorandum in Opposition to Plaintiffs' Motion for Judgment Upon the Agency Record*, at 15–19.

While there is no statutory prohibition on using United States profits on sales of the subject merchandise, neither is there any statutory authority commanding Commerce to use United States profits in constructing FMV. Where a statute is silent or ambiguous with respect to a specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute. *National Labor Relations Bd. v. United Food and Commercial Workers Union*, —— U.S. ——, 108 S.Ct. 413, 421, 98 L.Ed.2d 429 (1987). The Court finds that Commerce's use of an 8 percent profit figure is indeed based upon a permissible construction of the statute. Commerce's determination to use an 8 percent profit figure in constructing foreign value is reasonable and in accordance with law. This part of the action is affirmed.

## 2. EXCLUDING DUMPING MARGINS AS DE MINIMIS

■ Commerce excluded the dumping margins for Kejriwal (0.39%) and Kajaria (0.03%) as *de minimis*. On April 29, 1986 this Court held that Commerce could not deem a margin of dumping *de minimis* unless it either promulgated a rule in accordance with the Administrative Procedure Act, 5 U.S.C. § 553 (1982), or explained the basis for its decision to consider a margin *de minimis*. *Carlisle Tire & Rubber Co. v. United States*, 10 CIT ——, 634 F.Supp. 419, 422–25 (1986). Commerce has since promulgated its rules regarding *de minimis* margins. *See Antidumping and Countervailing Duties; De Minimis Dumping Margins and De Minimis Subsidies*, 52 Fed.Reg. 30,660 (Aug. 17, 1987) (regulations to be codified at 19 C.F.R. § 353.24). These rules are not retroactive to Commerce's determination of March 19, 1986, or otherwise control the outcome of the determination now before the Court. Independent of these newly-promulgated rules, Commerce may determine that a par-

ticular margin is *de minimis* if it supported by substantial evidence on the record and is otherwise in accordance with law within the meaning of 19 U.S.C. § 1516a(b)(2)(B) (1982). *Washington Red Raspberry Comm'n v. United States*, 11 CIT ——, 670 F.Supp. 1004, 1005, *appeal filed*, No. 88–1107/1070 (Fed.Cir. Dec. 4, 1987). Pursuant to this Court's decision in *Carlisle Tire & Rubber Co.*, the defendant asks the Court to remand this part of the action for an explanation on the record of the reasons behind Commerce's *de minimis* determinations for Kejriwal and Kajaria. If the other recalculations upon remand result in dumping margins which are no longer *de minimis*, the reasons behind the *de minimis* determinations for Kejriwal and Kajaria will be moot. If the margins remain *de minimis*, Commerce is ordered to explain the reasons for that determination as part of the remand proceedings.

## 3. ALLEGED COMPUTATIONAL ERRORS

### a. *Kejriwal's Commission*

The domestic producers assert that Kejriwal reported a commission on sales to "Customer A," and argue that Commerce erred in not deducting this commission on all sales to "Customer A." Conf.R. 1486 (at line 102), 1496 (at line 191). The record discloses that no adjustment to "Customer A" was necessary because the commission was paid to "Customer F" and "Customer G." R. 1396, Conf.R. 1320. Commerce accordingly made adjustments on United States sales to "Customer F" and "Customer G." Conf.R. 1471–74. This part of the action is affirmed.

### b. *Kejriwal's Inspection Charges*

The domestic producers argue that Commerce erred in not deducting an inspection charge from eleven sales of grates and frames. Commerce verified the existence of the inspection charge by examining its existence on sample sales. R. 1394, Conf.R. 1318. Commerce made no adjustment for inspection charges on the challenged eleven sales because Kejriwal did not report these charges for the eleven sales, which were not part of the sample. The record supports the conclusion that Commerce only made adjustments when inspection charges were incurred. Conf.R. 440 (at lines 37–47). This part of the action is affirmed.

## 4. WITHDRAWN CLAIMS

The domestic producers alleged that Commerce failed to correct certain data input errors for Kejriwal, and challenged the formula used to determine Kajaria's credit expenses on a transaction. The domestic producers also urged that Commerce failed to investigate a possible relationship between RSI and a confidential entity to determine whether USP should be calculated on the basis of purchase price or the exporter's sales price. The domestic producers withdrew these assignments of error at oral argument. These parts of the action are affirmed.

## 5. ISSUES FOR WHICH DEFENDANT CONSENTS TO REMAND

In its final determination, Commerce stated that it accounted for a rebate of the excise duty drawback by adding a duty drawback to the United States Price (USP) pursuant to 19 U.S.C. § 1677a(d)(1)(B) (1982), which provides for an upward adjustment to USP for customs duties that are rebated or uncollected by reason of exportation. 51 Fed.Reg. at 9,487. The record discloses that Commerce also deducted an amount for the excise duty drawback from each respondent's foreign market value (FMV). Conf.R. 65–69. The plaintiffs assigned as error Commerce's counting of the same taxes as both a duty drawback adjustment to USP and a reduction in material costs in the constructed FMV. In *Serampore Indus. v. United States*, 11 CIT ——, 675 F.Supp. 1354, 1357 (1987), this Court remanded this issue to Commerce for recalculation as to Serampore only. Consistent with *Serampore*, Commerce asks this Court to remand this issue for recalculations as to RSI, Kejriwal, and Kajaria. This part of the action is remanded.

The domestic producers also assign as error Commerce's failure to make an adjustment for physical difference in merchandise. During verification, Commerce discovered that at least one of the respondents sold castings with nuts and bolts. R. 1429. The domestic producers assert that the addition of nuts and bolts increases the cost of the merchandise, *Plaintiffs' Memorandum in Support of Motion for Judgment on the Administrative Record,* at 36–37, and argue that disregarding the physical difference in material costs in constructing FMV is inconsistent with the antidumping law, Commerce's regulations, and Commerce's prior practice. *See* 19 U.S.C. § 1677b(a)(4)(C) (1982); 19 C.F.R. § 353.16 (1986). At oral argument the defendant agreed to make the requested recalculation upon remand. This part of the action is remanded.

The domestic producers challenge the inclusion in Commerce's final analysis of one of RSI's reported United States sales because that sale had been cancelled, and assert that Commerce improperly calculated certain United States selling and movement expenses for RSI. The domestic producers also assert that Commerce verified that a certain transaction involved the sale of light castings, but that Commerce mistakenly classified these castings as heavy castings on line 107 of Commerce's final computer printout. Conf.R. 1254, 1591. At oral argument the defendant consented to a remand on these issues to correct the challenged figures. These parts of the action are remanded.

The domestic producers also contest Commerce's treatment of indirect taxes rebated to Kejriwal under the Cash Compensatory Support (CCS) program. R. 1394–95. Commerce added both the CCS payment and the excise duty drawback to USP. Commerce concedes that an upward adjustment to USP was improper, and asks the Court to remand. This part of the action is remanded.

## 6. RELIEF BEYOND THE COMPLAINT AND PRAYER FOR RELIEF

■ The domestic producers assert that during verification in India, Commerce de-

termined that Serampore had incorrectly reported the number of pieces involved in certain transactions. Defendant informed the Court at argument that correction of this error would require sending another verification team to India. The Court does not reach this contention against Serampore in the absence of defendant's consent. The domestic producers' complaint is expressly limited to challenging Commerce's final determinations for RSI, Kejriwal, and Kajaria. Complaint at 4. Serampore's dumping margin is the subject of *Serampore Indus. v. United States Dept. of Commerce,* 11 CIT ——, 675 F.Supp. 1354 (1987). In the absence of the defendant's consent, the Court declines to order relief outside the scope of the domestic producers' complaint and request for relief when the remedy would entail great expense in conducting another verification in India.

## 7. RELIEF OUTSIDE THE JURISDICTION OF THE COURT

The Indian exporters move the Court to remand for recalculation of the Indian central sales tax, consistent with the government's consent to a remand on the same issue in *Serampore Indus.,* 11 CIT at ——, 675 F.Supp. at 1357–58.

Judicial authority supports granting a request for remand if it fosters and promotes fundamental fairness. *ILWU Local 142 v. Donovan,* 12 CIT ——, 678 F.Supp. 307, 310 (1988). Additionally, Rule 1 of the Rules of this Court provides that the Rules of the Court "shall be construed to secure the just, speedy, and inexpensive determination of every action."

■ RSI, Kejriwal, and Kajaria had not previously contested Commerce's treatment of the central sales tax because no affirmative dumping finding was entered against them. As a general rule, a prevailing party in an administrative proceeding may not appeal the proceeding only because it disagrees with some of the findings or reasoning. *Freeport Minerals Co. v. United States,* 3 Fed.Cir. (T) 114, 119, 758 F.2d 629, 634 (1985).

Although the Court is sympathetic to the plea that denial of the motion would cause undue delay if the remand results produce actionable dumping margins against RSI, Kejriwal and Kajaria, the Court finds that it lacks jurisdiction to order a remand in this case for the recalculation of the tax incidence on castings produced by RSI, Kejriwal and Kajaria. These exporters intervened "for the purpose of defending [Commerce's] determination that Kejriwal, Kajaria, and RSI are not selling certain iron construction castings to the U.S. at less than fair value." Motion to Intervene, filed July 2, 1986. This Court has consistently held that it lacks jurisdiction over a challenge to a Commerce determination made by an intervenor when the challenge is made subsequent to the thirty day deadline under 19 U.S.C. § 1516a(a)(2) for instituting an action. *National Ass'n of Mirror Mfgs. v. United States*, 11 CIT —, 670 F.Supp. 1013 (1987); *Washington Red Raspberry Comm'n v. United States*, 11 CIT —, 657 F.Supp. 537, 545–46 (1987); *East Chilliwack Fruit Growers Cooperative v. United States*, 11 CIT —, 655 F.Supp. 499, 504–05 (1987); *Al Tech Specialty Steel Corp. v. United States*, 10 CIT —, 633 F.Supp. 1376, 1380 (1986); *Fuji Elec. Co. v. United States*, 7 CIT 247, 595 F.Supp. 1152, *appeal dismissed*, No. 84–1639 (Fed.Cir.1984); *Nakajima All Co. v. United States*, 2 CIT 170 (1981) [available on WESTLAW, 1981 WL 2473]. The Indian exporters did not commence an action to challenge Commerce's findings as to RSI, Kejriwal, and Kajaria. They raised the issue concerning the recalculation of the tax incidence incurred on their castings for the first time in response to plaintiffs' motion for judgment upon the agency record. Under the cases and statutory framework, the Court must deny the Indian exporters' motion. However, if remand results from the other issues lead to finding a level of dumping which warrants imposition of an antidumping duty, then RSI, Kejriwal, and Kajaria will suffer from a legally cognizable injury which would allow them to institute an action to contest the remand results pursuant to 28 U.S.C. § 1581(c) (1982), as provided in 19 U.S.C. § 1516a. *See Al Tech Specialty Steel Corp.*, 10 CIT —, 633 F.Supp. 1376, 1380 (1986).

### Conclusion

This action is remanded to Commerce to make the appropriate explanations on the record or recalculations within 30 days. The domestic producers are granted 15 days after receipt of the remand results in which to file a brief. Defendant-intervenors and Commerce are each granted 10 days after receipt of the domestic producers' brief in which to file a reply.