**ALHAMBRA FOUNDRY CO., LTD., et al., Plaintiffs,**

v.

**UNITED STATES, Defendant,**

and

**Kejriwal Steel and Iron Works, et al., Defendant–Intervenors.**

No. 86–04–00484.

United States Court of International Trade.

Decided November 22, 1988.

Collier, Shannon, Rill & Scott, Paul C. Rosenthal and Carol A. Mitchell, Washington, D.C., for plaintiffs.

John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, U.S. Dept. of Justice, Platte B. Moring, III; U.S. Dept. of Commerce, Office of the Chief Counsel for Intern. Trade, Duane W. Layton, Washington, D.C., for defendant.

Kaplan, Russin & Vecchi, Dennis James, Jr., Washington, D.C., for intervenors.

DiCARLO, Judge:

This action is before the Court to review remand results ordered in *Alhambra Foundry Co. v. United States*, 12 CIT ——, 685 F.Supp. 1252 (1988) (*Alhambra I*). *Alhambra I* directed Commerce to (A)

correct certain computational and clerical errors; (B) explain the basis for finding dumping margins to be *de minimis;* and (C) explain its treatment of Indian government payments as a "cost of materials adjustment" when Commerce treated similar payments as a "circumstance of sale adjustment" in another determination. Upon review of the remand results, the Court finds the remand determination to be according to law and supported by substantial evidence on the record as a whole.

## BACKGROUND

The International Trade Administration of the United States Department of Commerce (Commerce) investigated four exporters of iron construction castings from India and determined that one exporter was dumping merchandise, that one exporter was not dumping, and that two other exporters were dumping at *de minimis* levels. *Certain Iron Construction Castings From India; Final Determination of Sales at Less Than Fair Value,* 51 Fed. Reg. 9486 (Mar. 19, 1986). The Indian exporter found to be dumping challenged that finding in *Serampore Indus. v. United States,* 11 CIT ——, 675 F.Supp. 1354 (1987) (*Serampore I*), and 12 CIT ——, 696 F.Supp. 665 (1988) (*Serampore II*). In *Alhambra I,* 12 CIT ——, 685 F.Supp. 1252 (1988), United States producers of iron construction castings (the "domestic producers") challenged Commerce's findings of zero and *de minimis* dumping margins.

## DISCUSSION

## A. CORRECTED CALCULATIONS

Commerce consented to remand to correct several specific errors. Neither the Indian manufacturers nor the domestic producers contest these remand corrections.

### 1. *Double Counting*

Commerce had accounted for excise duty drawback by adding a duty drawback to United States price (USP). On remand Commerce determined that: (1) excise duty on pig iron is a tax and not a customs duty; (2) excise duty drawback was deducted from the foreign market value (FMV) and inadvertently added to USP; and, (3) as a rebate of indirect tax, excise duty drawback should have been deducted from FMV pursuant to 19 U.S.C. § 1677b(e)(1)(A) rather than added to USP. On remand Commerce erased the double counting of excise duty drawback.

Commerce also double counted payments the Indian manufacturer Kejriwal received under the Indian government's Cash Compensatory Support Program. R. 1394–95. Commerce eliminated this error on remand.

### 2. *Physical Difference in Merchandise*

At least one exporter sold castings with nuts and bolts, which increased material costs. R. 1429. The domestic producers argued that disregarding this physical difference in merchandise in constructing FMV contravened 19 U.S.C. § 1677b(a)(4)(C) (1982) and 19 C.F.R. § 353.16. On remand, Commerce could not identify an accurate and defensible cost for these nuts and bolts and thus deleted these amounts because of the small percentage of sales involved. *See Remand Results* at 8.

### 3. *Cancelled Sale*

Commerce failed to delete one reported sale that had been cancelled. Conf.R. 1383, 1530. On remand Commerce discovered that instead of cancelling the sale, Commerce had duplicated it at another observation line. Commerce deleted both of these sales in the remand results.

### 4. *Light Castings*

One producer exported both "light" and "heavy" iron castings. Conf.R. 1575–80. Light castings receive a tax rebate upon export equal to 10% of f.o.b. value, while heavy castings receive only 5%. Conf.R. 426. On remand, Commerce determined it had incorrectly classified one sale as a heavy casting. Commerce reclassified this sale as a light casting which received the 10% payment.

### 5. *F.O.B. Sales*

Although RSI (India) Pvt., Ltd. ("RSI") was billed for freight on the gross weight for certain shipments, RSI charged certain freight costs based on net weight. Conf.R. 1398, 1400. On remand Commerce adjusted these f.o.b. sales for the cost differences between gross and net weight.

### 6. *Bank Charges*

Commerce verified that RSI incurred bank charges on its export sales for postage associated with each forwarding schedule. Conf.R. 1376, 1394. Commerce did not adjust for this bank charge in its final determination. On remand Commerce calculated this bank charge on a per pound basis and adjusted FMV to reflect this charge for all sales except those where the credit cost paid by RSI's customer exceeded the total credit charges RSI paid to its bank.

### B. EXCLUDING DUMPING MARGINS AS DE MINIMIS

■ Commerce excluded the remand margins for RSI (0.02%) and Kajaria (0.04%) as *de minimis*. The Federal Circuit recently affirmed Commerce's power to declare margins to be *de minimis:*

> The *de minimis* concept is well-established in federal law. Federal courts and administrative agencies repeatedly have applied the *de minimis* principle in interpreting statutes, even when Congress failed explicitly to provide for the rule. [Commerce] has long ignored *de minimis* dumping margins. [Plaintiff] has given us no reason to disturb this practice.
>
> Although we are not bound by the case law precedent of the United States Court of International Trade, we are in complete agreement with, and adopt as our own, the holding in *Carlisle Tire and Rubber Co. v. United States* [, 10 CIT 301, 634 F.Supp. 419 (1986),] that [Commerce] may find that dumping margins less than 0.50 percent are *de minimis,* but only if [Commerce] explains the basis for its decision.

*Washington Red Raspberry Comm'n v. United States,* 859 F.2d 898, 903 (Fed.Cir. 1988) (footnotes omitted). Both the determination underlying the Federal Circuit's *Washington Red Raspberry Comm'n* decision, *Red Raspberries from Canada; Final Affirmative Determination of Sales at Less Than Fair Value,* 50 Fed.Reg. 19,768 (May 10, 1985), and the determination in this action were rendered before Commerce promulgated 19 C.F.R. § 353.24 (1988), a regulation regarding *de minimis* margins. *See Washington Red Raspberry Comm'n v. United States,* 12 CIT ——, 670 F.Supp. 1004 (1987), *aff'd,* 859 F.2d 898 (Fed.Cir.1988). *See also Carlisle Tire and Rubber Co. v. United States,* 10 CIT 301, 634 F.Supp. 419 (1986).

Commerce states that whether a margin is *de minimis* does not depend on the existence of other tariffs. While traditional customs tariffs raise revenue or protect domestic industries, Commerce identifies the intent of antidumping duties as offsetting effects of price discrimination. Upon this framework Commerce found the 0.02% and 0.04% dumping margins to be *de minimis* by applying a "cents per pound" standard. Antidumping duties are assessed on the exporter's net price, i.e., the gross sales price net of items such as freight and insurance. Under the standard applied, the freight charges are high in relation to unit prices because castings are heavy yet relatively inexpensive.

The actual margins for RSI and Kajaria would result in a truly negligible antidumping duty. If estimated duty deposits had been imposed, these companies would have paid less than one hundredth of a cent per pound. *See Remand Results* at 15. Upon review of Commerce's explanation and the confidential remand results, the Court finds Commerce's determination of *de minimis* margins to be supported by substantial evidence on the record as a whole and according to law.

### C. EXPLANATION OF APPARENTLY INCONSISTENT PRACTICE

■ The domestic producers argued that Commerce acted inconsistently because it treated Indian Price Reimbursement Scheme (IPRS) payments for steel as a

"circumstance of sale adjustment" in *Certain Welded Carbon Steel Standard Pipe and Tube From India; Final Determination of Sales at Less Than Fair Value*, 51 Fed.Reg. 9089, 9091 (Mar. 17, 1986) (the "*Sawhill* determination"), and then two days later treated IPRS payments for pig iron as an "offset to material costs." *Certain Iron Construction Castings From India; Final Determination of Sales at Less Than Fair Value*, 51 Fed.Reg. 9486 (Mar. 19, 1986).

Noting that "[a]n agency must either conform itself to its prior decisions or explain the reasons for its departure," the Court remanded to Commerce "for an explanation of why the practice in this case is different from *Sawhill*, or, in the alternative, for recalculation of the IPRS rebates as a circumstance of sale adjustment to conform to the practice approved in *Sawhill*." *Alhambra I*, 12 CIT at ——, 685 F.Supp. at 1258.

In this limited remand the Court excluded, on grounds of failure to exhaust administrative remedies, other arguments of the domestic industry concerning Commerce's treatment of IPRS payments. The Court found it appropriate to require the exhaustion of administrative remedies because Commerce did not have an opportunity to comment on those arguments during the administrative investigation. *Alhambra I*, 12 CIT at ——, 685 F.Supp. at 1257.

Before undertaking to explain why Commerce did not make the same adjustments for IPRS payments in *Sawhill* and *Alhambra I*, Commerce's Office of Investigations solicited comments from the interested parties:

> In [*Alhambra I*], the Court of International Trade remanded the antidumping duty determination of iron construction castings from India to [Commerce]. . . . In part, the Court held that [Commerce's] treatment of IPRS payments as a direct offset to the cost of raw materials is inconsistent with [Commerce's] treatment of similar payments in another determination as a circumstance of sale adjustment pursuant to 19 C.F.R. [§] 353.15 (*see* [*Sawhill*]).

> Before addressing this part of the Court's remand, we are giving you an opportunity to present your written comments to us on this issue. Your brief on this issue is due on June 13, 1988. You must serve a copy of your brief to the other parties in this proceeding by hand. You will have until June 20, 1988, to submit a rebuttal brief.

*Letter from Michael J. Coursey to Paul Rosenthal and Dennis James* (June 6, 1988).

Commerce has now explained why it treated IPRS payments as a circumstance of sale adjustment in *Sawhill* and as an adjustment to material costs in this separate determination. In *Sawhill*, Commerce viewed an IPRS program for steel that was virtually identical to the program for pig iron. The IPRS program for steel rebated to Indian pipe and tube exporters the "difference between domestically-produced and internationally-acquired steel prices." 51 Fed.Reg. at 9091. Commerce determined it would be unreasonable to compare the United States sales of pipe and tube that received IPRS payments with home market sales that did not benefit from the IPRS. Consequently, Commerce made a circumstance of sale adjustment. 19 U.S.C. § 1677b(a)(4)(B); 19 C.F.R. § 353.15. Adjusting steel costs was not an option for Commerce because FMV in *Sawhill* was based upon home market prices made pursuant to 19 U.S.C. § 1677b(a)(1). As Commerce explained in the *Sawhill* determination,

> the IPRS rebate is directly related to, and in fact contingent upon, the export sale of the merchandise under investigation. Receipt to the IPRS effectively enhanced the net return to TISCO on those sales. Therefore, we believe this adjustment is comparable to other circumstance of sale adjustments.

51 Fed.Reg. at 9091. *Sawhill Tubular Div. Cyclops Corp. v. United States*, 11 CIT ——, 666 F.Supp. 1550 (1987), affirmed Commerce's determination. Commerce found that IPRS payments were directly related to export sales of pipe and tube and decreased the manufacturer's cost of pro-

ducing the exported merchandise. *Id.* at ——, 666 F.Supp. at 1557. Since IPRS payments effectively lowered steel costs, and thus the price of exports, a fair comparison of ex-factory prices necessitated a circumstance of sale adjustment to FMV to account for the fact that no IPRS cost savings were achieved on home market sales.

*Sawhill* did not declare that a circumstance of sale adjustment was the only method by which Commerce could account for IPRS payments. Rather, *Sawhill* affirmed that Commerce could make that particular adjustment in that determination based on home market prices. Indeed, *Sawhill* indicates that Commerce should treat IPRS payments differently where it bases FMV upon constructed value:

> [T]here are several cases which indicate how an export payment such as the IPRS should be treated when FMV is based upon constructed value rather than home market prices. In *United States v. European Trading Co.*, 27 CCPA 289, C.A. D. 103 (1940), a German producer of wire fish netting received a rebate upon exportation from the supplier of the principal input. The Court of Customs and [Patent] Appeals held that in calculating the cost of production, the amount of the rebate should not be added. The Court affirmed the lower court which held that even assuming the rebate was a subsidy, the proper cost was the producer's *actual cost*, with no addition for the rebate. *See also Al Tech Specialty Steel Corp. v. United States*, 10 CIT ——, 633 F.Supp. 1376 (1986) (Commerce's decision not to include subsidies in cost of production and constructed value calculations was reasonable).

*Sawhill*, 11 CIT at ——, 666 F.Supp. at 1557.

Had Commerce identified any Indian company that produced merchandise from duty-free imported pig iron, Commerce states it would have calculated raw material costs under 19 U.S.C. § 1677b(e)(1)(A) upon actual international prices paid. Just as Commerce would calculate raw material costs net of duty drawback, Commerce calculated pig iron costs net of IPRS.

Because the *Sawhill* fair market value comparison was price to price, the only adjustment available for Commerce was a circumstance of sale adjustment. With the constructed value for iron construction castings, Commerce had a choice of making either a circumstance of sale adjustment or accounting for IPRS in raw material costs. Commerce chose the latter course because IPRS reduced the cost of raw materials.

The Court finds Commerce's explanation of why it treated IPRS as an offset to material costs under 19 U.S.C. § 1677b(e)(1) to be according to law and supported by substantial evidence on the record as a whole. The domestic producers raise other issues in their reply brief, but these are beyond the scope of the remand order to explain *Sawhill*. *Alberta Pork Producers' Mktg. Bd. v. United States*, 12 CIT ——, 683 F.Supp. 1398, 1403 (1988). Commerce's initial request for comments from the parties on the remand to explain *Sawhill* did not expand the scope of the remand.

## CONCLUSION

Commerce's correction of clerical errors changed the dumping margins for each of the Indian producers except Serampore:

| Manufacturers/seller/exporters | Weighted average margin percentage |
| --- | --- |
| RSI (de minimis) (excluded) .. | 0.02 |
| Kejriwal ................... | 2.93 |
| Serampore ................. | 0.82 |
| Kajaria (de minimis) (excluded) | 0.04 |
| All others................. | 2.37 |

The Court finds Commerce's remand corrections, findings of *de minimis* margins, and explanation of *Sawhill* are within the scope of the ordered remand. The Court finds that Commerce's remand determination is according to law and supported by substantial evidence on the record as a whole. The action will be dismissed.