**SERAMPORE INDUSTRIES PVT. LTD., and The Engineering Export Promotion Council of India, Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF COMMERCE, INTERNATIONAL TRADE ADMINISTRATION, Defendant,**

Alhambra Foundry Co., et al., Defendant–Intervenors.

Court No. 86–06–00743.

United States Court of International Trade.

Nov. 25, 1987.

Kaplan, Russin & Vecchi, Dennis James, Jr., Washington, D.C., for plaintiffs.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Dept. of Justice, Commercial Litigation Branch, and A. David Lafer, Washington, D.C., for defendant.

Collier, Shannon, Rill & Scott, Paul C. Rosenthal and Carol Mitchell, Washington, D.C., for defendant-intervenors.

DiCARLO, Judge:

Serampore Industries Private Ltd. and the Engineering Export Promotion Council of India (plaintiffs) challenge the final determination of the International Trade Administration of the United States Department of Commerce (Commerce) that certain iron construction castings from India are being or are likely to be sold in the United States at less than fair value (LTFV). *Certain Iron Construction Castings From India; Final Determination of Sales at Less Than Fair Value*, 51 Fed.Reg. 9486 (Mar. 19, 1986). This Court has jurisdiction over the action pursuant to 19 U.S.C. § 1516a(a)(2) (Supp. III 1985) and 28 U.S.C. § 1581(c) 1982. Plaintiffs move under Rule 56.1 of the Rules of this Court for judgment on the agency record and ask the Court to remand to Commerce for certain recalculations. Commerce concedes it erred in making some of the challenged calculations and asks the Court to remand. The Court affirms in part and remands in part.

## Background

The Municipal Castings Fair Trade Council, a trade association which represents domestic producers of iron construction castings, and fifteen named members of the association filed a petition with Commerce alleging that iron construction castings from India were being sold in the United States at LTFV. *Certain Iron Construction Castings From India; Initiation of Antidumping Duty Investigation*, 50 Fed.Reg. 24,014 (June 7, 1985).

Commerce presented questionnaires to Serampore and three other Indian companies under investigation. Serampore claimed an adjustment for indirect taxes paid on items physically incorporated into the final products but refunded upon export by means of a cash compensatory support lump sum payment. Serampore also claimed an adjustment for drawback upon export of excise duty paid on the raw materials used to produce the finished castings. Serampore further claimed an upward adjustment of its United States price (USP) for the deposit of estimated countervailing duties on heavy iron castings entered during the period of investigation.

In its preliminary determination of LTFV sales, Commerce made upward adjustments to Serampore's USP for the cash compensatory support payment, the excise duty drawback, and the deposits of estimated countervailing duties. *Iron Construction Castings From India; Preliminary Determination of Sales at Less Than Fair Value*, 50 Fed.Reg. 43,595 (Oct. 28, 1985).

Commerce verified Serampore's initial and supplemental questionnaire responses and found that Serampore received a 5% cash compensatory support payment for refund of indirect taxes upon export of heavy castings and a 10% cash compensatory support payment for certain light castings. Commerce also verified that Serampore received a drawback of excise duty on iron castings exported to the United States. Commerce determined that the prices Serampore paid for pig iron included excise duty, octroi (border tax) and sales taxes. Citing Serampore's recordkeeping, Commerce did not isolate taxes on paint and packing materials.

In its final determination of sales at LTFV, Commerce found the following weighted-average dumping margins:

| Manufacturers/sellers/exporters | Weighted-average margin percentage |
|---|---|
| RSI (excluded) | 0 |
| Kejriwal (de minimis) (excluded) | 0.39 |
| Serampore | 0.90 |
| Kajaria (de minimis) (excluded) | 0.03 |
| All others | 0.90 |

51 Fed.Reg. at 9490.

In calculating Serampore's dumping margin, Commerce did not add the cash compensatory support payment to USP. Commerce deducted from foreign market value some of the indirect taxes refunded upon export, but made no adjustments for refunds of the central sales tax. Commerce also added duty drawback to Serampore's USP, although Commerce had verified that the drawback was of excise duty and not import duty.

Although Commerce had added deposits of estimated countervailing duties to Serampore's USP in its preliminary determination, Commerce did not add deposits of estimated countervailing duties to USP in its final determination.

With respect to Serampore's weighted average dumping margin, Commerce refused to use Serampore's sales at fair value to offset its sales at LTFV.

With respect to the weighted average margin for "all other" companies, Commerce disregarded margins of the other companies investigated that were found not to be dumping or dumping only at de minimis rates, and applied the margin found for Serampore alone to the "all other" rate.

Commerce has moved to strike two paragraphs of plaintiffs' reply brief and an affidavit of plaintiffs' counsel attached to that brief. The Court reserves ruling on the motion because the subject challenged in plaintiffs' reply brief is remanded.

### Discussion

■ In reviewing final Commerce determinations in antidumping duty investigations, the Court is directed by Congress to hold unlawful those determinations found "to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1982). Under the substantial evidence standard for review of agency determinations, the Court will affirm the agency's findings if they are supported in the record by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Federal Trade Comm'n v. Indiana Fed'n of Dentists*, 476 U.S. 447, 106 S.Ct. 2009, 2014, 90 L.Ed.2d 445 (1986);

*Atlantic Sugar, Ltd. v. United States*, 2 Fed.Cir. (T) 130, 136, 744 F.2d 1556, 1562 (1984). The Court "must accord substantial weight to an agency's interpretation of a statute it administers." *American Lamb Co. v. United States*, 785 F.2d 994, 1001 (Fed.Cir.1986) (citing *Zenith Radio Corp. v. United States*, 437 U.S. 443, 450–51, 98 S.Ct. 2441, 2445, 57 L.Ed.2d 337 (1978); *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1964)). However, "[t]he traditional deference courts pay to agency interpretation is not to be applied to alter the clearly expressed intent of Congress." *Board of Governors of the Federal Reserve System v. Dimension Financial Corp.*, 474 U.S. 361, 106 S.Ct. 681, 686, 88 L.Ed.2d 691 (1986).

#### 1. Excise Duty Drawback

■ Plaintiffs claim that Commerce erred in adding excise duty drawback to Serampore's USP. In its final determination, Commerce declared that it was adding "duty drawback" to USP pursuant to 19 U.S.C. § 1677a(d)(1)(B) (1982), which provides for an upward adjustment to USP for customs duties that are rebated or uncollected by reason of exportation. Subsequent to the determination and upon review of plaintiffs' arguments and the administrative record, the defendant concluded that: (1) the excise duty on pig iron is a tax and not an import customs duty; (2) the excise duty drawback was in fact deducted from Serampore's foreign market value and inadvertently added to its USP, thereby negating the adjustment made to Serampore's foreign market value; and (3) as a rebate of indirect taxes, the excise duty drawback should only have been deducted from Serampore's constructed value calculations pursuant to 19 U.S.C. § 1677b(e)(1)(A) (1982), not added to the USP. Commerce thus concedes that the addition of excise duty drawback to Serampore's USP was incorrect. This part of the action is remanded.

#### 2. Central Sales Tax

Plaintiffs claim that Commerce erred with respect to indirect taxes by excluding

from Serampore's constructed value less than the full amount of indirect taxes refunded by way of cash compensatory support. Commerce verified that the prices Serampore paid for pig iron included excise duty, octroi, and sales taxes. Although Commerce made adjustments for refunds of excise duty, octroi, and West Bengal State sales tax, Commerce made no adjustments for the Indian central sales tax.

Defendant asserted at oral argument that Commerce did not err in failing to account for the central sales tax. The Court ordered further briefing on the central sales tax issue.

In response to the Court's order, defendant moved pursuant to Rule 1 of the Rules of this Court for a remand in order to allow it to ascertain whether the iron construction castings Serampore produced incurred the central sales tax. If the answer is affirmative, Commerce will determine the amount of this indirect tax Serampore incurred during the period of investigation and make all appropriate adjustments. This part of the action is remanded.

### 3. *Estimated Countervailing Duties*

Plaintiffs claim that Commerce's final determination should have included an upward adjustment to USP for deposits of estimated countervailing duties paid on iron castings entered during the period of investigation. The antidumping statute and regulations mandate an upward adjustment to USP by the amount of any countervailing duty "imposed" on the merchandise to offset an export subsidy. 19 U.S.C. § 1677a(d)(1)(D) (1982); 19 C.F.R. § 353.10(d)(1)(iv) (1985). In 1984 Commerce instructed the United States Customs Service to collect a cash deposit of estimate duties of 2.19% of the entered value of future imports of iron castings from India. *Certain Iron–Metal Castings From India; Final Results of Administrative Review of Countervailing Duty Order,* 49 Fed.Reg. 40,943 (Oct. 18, 1984). This order to collect estimated countervailing duties was in effect during Commerce's period of investigation, which covered sales of iron construction castings made to the

United States from December 1, 1984 through May 31, 1985. In Commerce's preliminary determination, it increased USP for deposits of the estimated countervailing duties:

> In accordance with section 772(d)(1)(D) of the Act, [19 U.S.C. § 1677a], where appropriate, we added the amount of countervailing duty *imposed* in India on certain heavy iron metal castings to offset export subsidies.

50 Fed.Reg. at 43,596 (emphasis added).

In its final determination, however, Commerce did not adjust USP to account for the deposits of estimated countervailing duties, stating that 19 U.S.C. § 1677a(d)(1)(D) does not specifically prescribe an adjustment to USP "until the countervailing duty is acutally *assessed* on the subject merchandise...." 51 Fed.Reg. at 9487.

■ The starting point for interpreting a statute is the language of the statute itself, which must ordinarily be regarded as conclusive absent a clearly expressed legislative intention to the contrary. *Consumer Product Safety Comm'n v. GTE Sylvania,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *Southeastern Community College v. Davis,* 442 U.S. 397, 405, 99 S.Ct. 2361, 2366, 60 L.Ed.2d 980 (1979); *Gilmore Steel Corp. v. United States,* 11 CIT ——, Slip Op. 87–112 at 9 (Oct. 6, 1987). Going behind a statute's plain language to search for a possibly contrary congressional intent is a step the court must take cautiously, even under the best circumstances. *United States v. Locke,* 471 U.S. 84, 95–96, 105 S.Ct. 1785, 1792–93, 85 L.Ed.2d 64 (1985).

■ The statute provides for USP to be increased by

> the amount of any countervailing duty imposed on the merchandise under part I of this subtitle or section 1303 of this title to offset an export subsidy.

19 U.S.C. § 1677a(d)(1)(D) (1982). The language of the statute does not disclose the scope of the meaning Congress intended to accord the word "imposed."

Commerce interprets the word "imposed" as used in 19 U.S.C. § 1677a(d)(1)(D) and 19 C.F.R. § 353.10(d)(1)(iv) to include countervailing duties only when they are "actually imposed" or "assessed." Commerce and the defendant-intervenors state that this interpretation, which excludes deposits of estimated countervailing duties, is of consistent and longstanding practice. *See, e.g., Antidumping; Circular Welded Carbon Steel Pipes and Tubes From Thailand; Final Determination of Sales at Less Than Fair Value,* 51 Fed.Reg. 3384, 3387 (Jan. 27, 1986); *Low-Fuming Brazing Copper Rod and Wire From New Zealand; Final Determination of Sales at Less Than Fair Value,* 50 Fed.Reg. 42580, 42581 (Oct. 21, 1985); *Oil Country Tubular Goods From Spain; Final Determination of Sales at Less Than Fair Value,* 50 Fed.Reg. 12599, 12601 (Mar. 29, 1985).

Commerce and the defendant-intervenors cite to legislative history of the Trade Agreements Act of 1979, which repealed the Antidumping Act of 1921 and reenacted its provisions as part of the Tariff Act of 1930. In the relevant portion of the Senate Finance Committee Report that accompanied the Trade Agreements Act of 1979, the Committee used the word "assessed" rather than "imposed" when referring to the adjustments for USP:

> The purpose of the amendment regarding additions to purchase price and exporter's sale price with respect to countervailing duties also *being assessed* because of an export subsidy is designed to clarify that such adjustment is made only to the extent that the exported merchandise, and not the other production of the foreign manufacturer ..., benefits from a particularl [sic] subsidy.

S.Rep. No. 249, 96th Cong. 1st Sess. 94, *reprinted in* 1979 U.S. Code Cong. & Ad. News 381, 480 (emphasis added). The provision is further explained in the relevant portion of the Statements of Administrative Action:

> A new adjustment to "purchase price" and "exporter's sales price" is intended to reflect provisions of Article VI of the General Agreement on Tariffs and Trade, by mandating the addition to "purchase price" or "exporter's sales price" of any countervailing duty *actually imposed* to offset an export subsidy paid on the same merchandise. (statute) The GATT prohibits the *assessment* of both antidumping and countervailing duties to compensate for the same cause of unfairly low priced imports, whether by dumping or as a result of an export subsidy.

H.R.Doc. No. 153, 96th Cong., 1st Sess. 412, *reprinted in* 1979 U.S. Code Cong. & Ad. News 683 (emphasis added). Nowhere in the legislative history of this provision is there any indication that Congress intended that Commerce adjust USP upwards for countervailing duty cash deposits, rather than countervailing duties actually imposed or assessed.

Plaintiffs argue that the word "imposed" has been used loosely in other contexts, and cite *Lewyt Corp. v. Commissioner of Internal Revenue,* 349 U.S. 237, 240, 75 S.Ct. 736, 739, 99 L.Ed. 1029 (1955); *Zenith Electronics Corp. v. United States,* 10 CIT ——, —— n. 14, 633 F.Supp. 1382, 1388 n. 14 (1986); *American Manufacturers of Castor Oil Products v. United States,* 8 CIT 255, 258 (1984) [Available on WESTLAW, 1984 WL 6067]; *Diversified Products Corp. v. United States,* 6 CIT 155, 163, 572 F.Supp. 883, 890 (1983).

Plaintiffs citation of cases using the word "imposed" in other contexts does not compel a conclusion that Commerce's interpretation of the word "imposed" as used in 19 U.S.C. § 1677a(d)(1)(D) and 19 C.F.R. § 353.10(d)(1)(iv) is either unreasonable or unlawful.

If, as in this case, an agency's interpretation of a statute does not contravene "clearly discernible legislative intent," the Court must uphold such interpretation as long as it is "sufficiently reasonable." *Kelley v. Secretary, United States Dep't of Labor,* 812 F.2d 1378, 1380 (Fed.Cir. 1987); *American Lamb Co. v. United States,* 785 F.2d 994, 1001 (Fed.Cir.1986).

This issue concerns adjustments to USP for deposits of estimated countervailing

duties in an antidumping duty determination. This Court has recently considered adjustments to USP for deposits of estimated antidumping duties in an antidumping duty determination. *PQ Corp. v. United States*, 11 CIT ——, 652 F.Supp. 724 (1987), presented the issue of whether Commerce erred in not deducting the deposit of antidumping duties from USP, where the exporter's subsidiary paid the deposit without passing it onto the United States buyer, and where no antidumping duty was ever actually assessed. The court noted that estimated deposits may be refunded if they later prove unnecessary:

> Under the Tariff Act of 1930, deposits of estimated antidumping duties must be posted for merchandise that is subject to an antidumping duty order. The amounts of these deposits are based upon past determinations of dumping margins involving previous entries. The amount of the actual antidumping duty that is eventually assessed on an entry of merchandise may vary significantly from the amount of estimated antidumping duties initially deposited on that entry. The difference between the deposit of estimated antidumping duties, and the actual assessed antidumping duties is either collected, or refunded with interest.

*PQ Corp.*, 11 CIT at ——, 652 F.Supp. at 737. The court held that it was reasonable for Commerce not to make any adjustments under 19 C.F.R. § 353.55 or 19 U.S.C. § 1677a(d)(2)(A) for deposits of estimated antidumping duties.

As with the estimated and assessed antidumping duties discussed in *PQ Corp.*, the law likewise distinguishes between the collection of cash deposits for estimated countervailing duties, 19 U.S.C. § 1671e(a)(4) (Supp. III 1985); 19 C.F.R. § 355.28(d)(2) (1985), and the subsequent assessment of countervailing duties, 19 U.S.C. § 1671e(a)(1) (1982); 19 C.F.R. §§ 355.36(a), 355.37 (1985).

Commerce's interpretation of the word "imposed" to mean "actually imposed" or "assessed" is supported by the legislative history and is sufficiently reasonable. Commerce thus properly refused to adjust USP for the deposits of estimated duties.

### 4. *Serampore's Weighted Average Margin*

While Serampore sold some merchandise at LTFV, it also sold some merchandise at or above its foreign market value. Commerce disregarded Serampore's fair value sales and considered only the sales at LTFV to determine Serampore's weighted average dumping margin. Plaintiffs contend that Commerce's practice improperly creates sales at LTFV where none would otherwise exist, because Serampore's fair value sales would "offset" its sales at LTFV.

The antidumping law provides in part that if Commerce

> determines that a class or kind of foreign merchandise is being, or is likely to be, sold in the United States at less than its fair value ... then there shall be imposed upon such merchandise an antidumping duty, in addition to any other duty imposed, in an amount equal to the amount by which the foreign market value exceeds the United States price for the merchandise.

19 U.S.C. § 1673 (1982).

A plain reading of the statute discloses no provision for Commerce to offset sales made at LTFV with sales made at fair value.

▆ The Court grants substantial deference to Commerce in both its interpretation of its statutory mandate and the methods it employs in administering the antidumping law. *See Consumer Products Div., SCM Corp. v. Silver Reed America, Inc.*, 3 Fed. Cir. (T) 83, 90, 753 F.2d 1033, 1039–40 (1985).

▆ Commerce may treat sales to the United States market made at or above the prices charged in the exporter's home market as having a zero percent dumping margin. The practice of considering negative margins as zero ensures that sales made at less than fair value on a portion of a company's product line to the United States market are not negated by more profitable sales. *Certain Welded Carbon Steel Standard Pipe and Tube From India; Final Determination of Sales at Less Than Fair Value*, 51 Fed.Reg. 9089, 9092 (Mar. 17, 1986). *See also Final Determination*

*of Sales At Not Less Than Fair Value; Potassium Chloride From Israel,* 50 Fed. Reg. 4560, 4562 (Jan 31, 1985) (95 percent of U.S. sales found to be at or above foreign market value; Commerce nonetheless found no reason to average fair value sales with the remaining percentage of sales at LTFV); Knoll, *United States Antidumping Law: The Case for Reconsideration,* 22 Tex. Int'l L.J. 265, 278 (1987); Sandler, *Primer on United States Trade Remedies,* 19 Int'l L. 761, 765 (1985).

Commerce has interpreted the statute in such a way as to prevent a foreign producer from masking its dumping with more profitable sales. Commerce's interpretation is reasonable and is in accordance with law.

5. *The "All Other" Weighted Average Margin*

◼ In its preliminary determination, Commerce calculated the rate for those companies which were not asked to respond to antidumping questionnaires by weight averaging the preliminary margins found for the four companies that were investigated. Margins were found for all four companies investigated and the weighted average "all other" rate was set at 3.10%. 50 Fed.Reg. at 43,596.

In the final determination, three of the four companies investigated were found to have zero or de minimis margins. 51 Fed. Reg. 9490. To calculate the "all other" rate for the final determination, Commerce disregarded the three companies with de minimis margins and based the "all other" rate on Serampore's rate alone.

Plaintiffs argue that Commerce's methodology is inconsistent, because in at least one other determination, *Certain Welded Carbon Steel Pipe and Tube Products From Turkey; Final Determination of Sales at Less Than Fair Value,* 51 Fed. Reg. 13044 (Apr. 17, 1986), Commerce did not ignore de minimis margins in setting the "all other" rate. Plaintiffs argue further that the practice of excluding de minimis margins in calculating the "all other" weighted average margin violates the GATT Antidumping Code, Agreement on Implementation of Article VI of the General Agreement on Tariffs and Trade, June 30, 1967, 19 U.S.T. 4348, 4356, T.I.A.S. No. 6431.

The Court does not reach the plaintiffs' GATT arguments because the defendant has neither distinguished nor explained *Certain Welded Carbon Steel Pipe and Tube Products From Turkey,* where Commerce included de minimis margins in calculating the "all other" rate. The Court is thus without an explanation from the concerned agency as to the reasoning behind its apparently inconsistent methodologies.

Defendant–Intervenors attempt to explain *Certain Welded Carbon Steel Pipe and Tube Products From Turkey,* as an example that Commerce "generally" will not consider company specific margins based on the use of best information available in calculating a weighted-average margin for "all others." Defendant–Intervenors' Memorandum at 30. However, as the court noted in *Badger–Powhatan v. United States,* 10 CIT ——, 633 F.Supp. 1364, 1371–72, *appeal dismissed for lack of jurisdiction,* 808 F.2d 823 (Fed.Cir. 1986), "[a]lthough intervenor's explanation is intriguing, there is no statement from the concerned agency that this is its reasoning."

Intervenors also observe that in earlier antidumping determinations Commerce set the "all other" rates at the highest dumping margin found for any firm investigated. *See, e.g., Preliminary Determination of Sales at Less Than Fair Value; Certain Steel Pipes and Tubes From Japan,* 47 Fed.Reg. 37263, 37266 (Aug. 24, 1982); *Preliminary Determination of Sales at Less Than Fair Value; Certain Steel Products From the Federal Republic of Germany,* 47 Fed.Reg. 35650, 35656 (Aug. 16, 1982); *Preliminary Determinations of Sales at Less Than Fair Value; Certain Steel Products From France,* 47 Fed.Reg. 35656, 35660 (Aug. 16, 1982). Intervenors opine that the practice of disregarding all margins lower than the highest deposit rate "apparently has been abandoned." Defendant–Intervenor's Memorandum at 30 n. 8. Commerce has also failed to explain its shift from this earlier practice.

"[I]f there is an agency practice to be given weight in this case, the court is sim-

ply at a loss as to what that practice is." *Badger–Powhatan*, 10 CIT at ——, 633 F.Supp. at 1372. Neither has Commerce promulgated any rule in accordance with the notice and comment provisions of the Administrative Procedure Act, 5 U.S.C. § 553 (1982). *See Carlisle Tire & Rubber Co. v. United States*, 10 CIT ——, 634 F.Supp. 419 (1986). The Court is unable to sustain an apparently inconsistent methodology used to calculate the "all other" rate. Commerce is ordered, as part of the remand proceedings, to explain the basis for its apparently inconsistent methodology.

### Conclusion

This action is remanded to Commerce to make its determination within 120 days. The plaintiffs will thereafter have 10 days in which to file a brief on the remand results with the Court. Defendant-intervenors and Commerce will thereafter have 10 days after receipt of the plaintiffs' brief in which to file a reply.

So ordered.