NTN BEARING CORPORATION OF AMERICA, American NTN Bearing Manufacturing Corp., and NTN Toyo Bearing Co., Ltd., Plaintiffs,

v.

UNITED STATES, United States Department of Commerce, and C. William Verity, Jr., Secretary, United States Department of Commerce, Defendants,

The Timken Company, Defendant–Intervenor.

Court No. 87–11–01066.

United States Court of International Trade.

Nov. 23, 1988.

Barnes, Richardson & Colburn, Robert E. Burke, Donald J. Unger, Kazumune V. Kano and J. Kevin Horgan, Chicago, Ill., for plaintiffs.

John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., Velta A. Melnbrencis, New York City (Stephanie J. Mitchell, Attorney–Advisor, Office of Chief Counsel for Import Admin., Dept. of Commerce, Washington, D.C., of counsel), for defendants.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr. and John M. Breen, Washington, D.C. (Scott A. Scherff, Sr. Corporate Counsel, Mansfield, Ohio, The Timken Co., of counsel), for defendant-intervenor.

OPINION

TSOUCALAS, Judge:

This matter is before the Court on plaintiffs' motion for a preliminary injunction to restrain defendants from liquidating certain entries subject to an antidumping duty order which is pending review before this Court. In accordance with a decision orally delivered at the conclusion of a hearing on this motion on November 15, 1988, plaintiffs' motion for a preliminary injunction is denied.

*Background*

On August 17, 1987, the Department of Commerce, International Trade Administration (ITA), determined that certain tapered roller bearings and parts thereof, finished and unfinished, from Japan were being sold at less than fair value. *Final Determination of Sales at Less Than Fair Value; Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, From Japan*, 52 Fed.Reg. 30,700 (Aug. 17, 1987).[1] Plaintiffs (NTN) thereafter commenced an action challenging ITA's dumping findings and the rate of duties to be assessed against the subject merchandise.

The cash deposit rate accompanying an affirmative dumping determination serves as an estimated dutiable amount with respect to subsequent entries. The actual

---

1. The antidumping duty order covering the subject merchandise was published on October 6, 1987. *See* 52 Fed.Reg. 37,352. This order and the antidumping determination which underlies it were amended subsequently. *See* 52 Fed.Reg. 47,955 (Dec. 17, 1987).

rate is determined at the conclusion of an administrative review conducted pursuant to 19 U.S.C. § 1675(a) (1982 & Supp. IV 1986).

The statutory framework was refashioned in 1984 so that ITA's performance of a review of the original dumping findings is triggered only when an interested party makes a request. *See* Trade and Tariff Act of 1984, Pub.L. 98–573, § 611(a)(2), 98 Stat. 3031 (1984). Pursuant to this new mandate, ITA promulgated a regulation prescribing that absent a petition for an administrative review, the estimated duty rate announced in the original duty order will govern all ensuing entries. 19 C.F.R. § 353.53a(d) (1988).

On September 30, 1988, the ITA gave proper notice that request for an administrative review covering entries from March 27, 1987 to September 30, 1988 must be made by October 31, 1988. 53 Fed.Reg. 38,314 (Sept. 30, 1988). In the event of ITA's receipt of a timely request, liquidation of these entries would have been suspended automatically during the pendency of such a review. Instead of requesting a review, however, NTN seeks to prevent liquidation of the subject entries via the extraordinary means of preliminary injunction.

The Court granted a Temporary Restraining Order on November 10, 1988 to preserve the *status quo* pending a hearing on NTN's motion for injunctive relief.

### Discussion

The question raised, whether a preliminary injunction should issue pending judicial scrutiny of the underlying affirmative dumping findings, is identical to the one raised in *Fundicao Tupy, S.A. v. United States*, 11 CIT ——, 669 F.Supp. 437 (1987).[2] The unanimous three-judge panel denied such a remedy, concluding that plaintiffs failed to meet the immediate and irreparable harm prong of the criteria governing authorization of injunctive relief.[3] In thus holding, three judges of this Court found significant the fact that plaintiffs deliberately chose not to avail itself of the existing administrative remedy. Since NTN recapitulates arguments rejected in *Fundicao Tupy* as lacking legal support, this Court denies the present motion on the reasoning articulated therein.

NTN relies exclusively on several decisions of this Court published subsequent to *Fundicao Tupy. See OKI Elec. Indust. Co. v. United States*, 11 CIT ——, 669 F.Supp. 480 (1987); *Ipsco Inc. v. United States*, 12 CIT ——, 692 F.Supp. 1368 (1988); *Sonco Steel Tube Div. v. United States*, 12 CIT ——, 698 F.Supp. 927 (1988). In these cases, two judges of the Court provided injunctive relief under similar factual circumstances. They expressed the view that the regulation prescribing automatic assessment of duties is inapplicable in situations where the original dumping order is being challenged. That regulation reads in pertinent part:

(d) *Automatic assessment of duties.*

(1) For orders or findings, if the Secretary does not receive a timely request under paragraph (a)(1), (a)(2), (a)(3), or (a)(5) of this section, the Secretary, without additional notice, will instruct the Customs Service to assess antidumping

---

**2.** The Court has the jurisdiction to grant injunctive relief pursuant to 19 U.S.C. § 1516a(c) (1982).

**3.** For *Fundicao Tupy*'s circuitous subsequent proceedings, *see Fundicao Tupy, S.A. v. United States*, 11 CIT ——, 671 F.Supp. 27 (1987) (granting an injunction pending interlocutory appeal of denial of preliminary injunction); *Fundicao Tupy, S.A. v. United States*, 12 CIT ——, 678 F.Supp. 898 (1988) (the Court of International Trade's (CIT) judgment on the merits); *Fundicao Tupy, S.A. v. United States*, 841 F.2d 1101 (Fed.Cir.1988) (interlocutory appeal dismissed as moot); *Fundicao Tupy, S.A. v. United States*, 12 CIT ——, slip op. 88–32 (Mar. 16, 1988) [available on WESTLAW, 1988 WL 24558] (granting a second stay pending appeal of CIT's judgment on the merits); *Fundicao Tupy, S.A. v. United States,* Order of July 26, 1988 (denying plaintiffs' motion to modify the scope of the second stay to include entries made during the second administrative review period for which plaintiffs failed to request review); *Fundicao Tupy, S.A. v. United States*, 12 CIT ——, 696 F.Supp. 1525 (1988) (denying motion to reconsider its Order of July 26, 1988) (DiCarlo, J., dissenting); *Fundicao Tupy, S.A. v. United States*, 859 F.2d 915 (Fed.Cir.1988) (affirming the CIT's judgment on the merits).

duties on the merchandise described in paragraphs (b)(1) through (b)(3) of this section at rates equal to the cash deposit of (or bond for) estimated antidumping duties required on that merchandise at the time of entry, or withdrawal from warehouse, for consumption and to continue to collect the cash deposit previously ordered.

19 C.F.R. § 353.53a(d).

*OKI, Ipsco,* and *Sonco* accord outstanding weight to the congressional goal of alleviating administrative backlogs through institution of elective review proceedings. In addition, the two judges stressed the inequitable impact that denial of injunctive remedy would have if the entries subject to a review were to be liquidated prior to a judicial examination. of the underlying dumping findings.

While this Court is cognizant of these equity considerations, it finds, on the basis of *Fundicao Tupy*'s interpretation of the prevailing statutory framework, that an injunction cannot properly be issued. The statutory introduction of optional initiation of an administrative review by an interested party also empowered ITA to adopt reasonable rules to administer the new congressional mandate. Section 353.53a(d), which requires the claimant to request review in order to avoid automatic liquidation during the pendency of judicial action, was promulgated in conformity with ITA's authority. As the court in *Fundicao Tupy* stated:

> Plaintiffs do not contest the validity of the regulation nor do they dispute that they were properly notified of the necessity of requesting a review. Instead, plaintiffs contend that they will suffer irreparable harm by virtue of the loss of judicial review as to entries which are liquidated pursuant to the above-cited regulation. In other words, the benefits of a judgment on the merits which is favorable to plaintiffs' position will not be applicable to those entries liquidated pursuant to § 353.53a(d). *See also* 19 U.S.C. § 1516a(c)(1) (1982) (providing that, unless enjoined by court order, entries be liquidated in accordance with the

administrative determination until notice of a contrary judicial decision is published).

> Had plaintiffs chosen to incur the expense of participating in an administrative review, the opportunity to obtain judicial review as to entries covered by that administrative proceeding could be protected. However, given the failure to seek such a review, § 353.53a(d), in effect, specifies the amount of the duties owed on the subject entries. Any harm, therefore, that plaintiffs may suffer if the entries are liquidated is undeniably the result of their failure to utilize the administrative remedy provided. *Cf. Zenith Radio Corp. v. United States,* 1 Fed.Cir. (T) 74, 78, 710 F.2d 806, 810 (1983) (the threat of liquidation constituted irreparable harm justifying injunctive relief where movant had participated in the administrative review process and was seeking to preserve the opportunity for judicial review of the results of that administrative review). The relevant statutory scheme contemplates that Commerce, in the first instance, be afforded an opportunity to review its determinations in the course of calculating actual dumping margins for a given period.

*Id.* at 439.

Accordingly, this Court will not exercise its injunctive power where plaintiffs, as those in *Fundicao Tupy,* were afforded adequate alternatives to safeguard their rights. To grant injunctive relief under the facts of this case would be to reward the plaintiffs for thwarting the administrative process.

The Court's reconsideration of the issue herein stems from the bifurcated development in *Fundicao Tupy* and its progeny. In view of the conflicting opinions of the judges of this Court, this Court invites the Federal Circuit to address this matter as soon as practicable should the instant decision be appealed so that the Court may have proper guidance and precedence in reviewing this foreseeably recurrent question.

Plaintiffs' motion is denied since they fail to demonstrate the threat of immediate and irreparable harm absent injunctive relief.