**KEJRIWAL IRON AND STEEL WORKS, LTD., Plaintiff,**

v.

**UNITED STATES, Defendant,**

and

**Alhambra Foundry Co., et al., Defendant–Intervenors.**

**Court No. 89–04–00172.**

United States Court of International Trade.

Jan. 26, 1990.

---

Kaplan Russin & Vecchi (Dennis James, Jr. and Kathleen F. Patterson), Washington, D.C., for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice (Platte B. Moring, III); Office of Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, D.C. (Andrea Fekkes Dynes), for defendant.

Collier Shannon & Scott (Paul C. Rosenthal and Carol A. Mitchell), Washington, D.C., for defendant-intervenor.

DiCARLO, Judge:

Pursuant to Rule 56.1 of the Rules of this Court, Kejriwal Iron and Steel Works, Ltd. challenges the final determination of the United States Department of Commerce, International Trade Administration that certain iron construction castings from India are being or are likely to be sold in the United States at less than fair value. *See Certain Iron Construction Castings From India; Amendment to Final Determination of Sales at Less than Fair Value and Antidumping Duty Order in Accordance With Decision Upon Remand,* 54 Fed.Reg. 11,989 (March 23, 1989); *Certain Iron Construction Castings From India; Final Determination of Sales at Less Than Fair Value,* 51 Fed.Reg. 9,486 (March 19, 1986).

This Court has jurisdiction under 28 U.S.C. § 1581(c) (1982). The Court remands so that Commerce may correct errors conceded by the government. The Court also remands for Commerce either to explain more fully its calculation of IPRS payments or, if Commerce determines that its methodology was incorrect, to recalculate IPRS payments and fully explain why its new methodology is in accordance with law and supported by substantial evidence on the record.

## DISCUSSION

Kejriwal alleges six errors in Commerce's dumping determination: (1) Commerce made certain computer input errors in its investigation; (2) Commerce improperly calculated constructed value by failing to deduct certain indirect taxes Kejriwal paid but which were later refunded upon export; (3) Commerce must make a circumstance of sale adjustment accounting for Kejriwal's entire Cash Compensatory Support (CCS) payment even if that payment exceeded the taxes Kejriwal paid; (4) Commerce understated payments to Kejriwal under India's International Price Reimbursement Scheme (IPRS); (5) Commerce double-counted the deduction of interest costs from foreign market value; and (6) Commerce improperly excluded a countervailing duty assessed on 1984 sales from Kejriwal's 1984 United States Prices.

### 1. COMPUTER INPUT ERRORS

Kejriwal and the government agree that Commerce made the following computer input errors: (1) excluding sale 124 from commerce's computer program data; (2) using incorrect foreign inland freight data for PPOBS (observation identifier) 1 and 2; (3) using incorrect brokerage charge data for PPOBS 24; (4) using incorrect weight data for PPOBS 136; and (5) using incorrect price per set data for PPOBS 187. Commerce requests a remand to correct these calculations.

■ The only alleged input error in contention is Commerce's failure to use ocean-freight data Kejriwal provided in a verification report in its calculation of United States Price (USP). Commerce claims that it used alternative data because Kejriwal failed to provide information as instructed and improperly "assigned an ocean freight component to the packaging material" by submitting data which allocated ocean freight over the weight of the merchandise and its packaging (gross weight). Defendant's Memorandum In Partial Opposition to Plaintiff's Motion for Judgment Upon

the Agency Record, 14. In its reply brief, Kejriwal did not respond to Commerce's argument.

Commerce is directed to deduct from USP "costs, charges, and expenses ... incident to bringing the merchandise from the place of shipment in the country of exportation to the place of delivery in the United States...." 19 U.S.C. § 1677a(d)(2)(A) (1988). Kejriwal appears to have calculated the cost of shipping by dividing the total shipping expense it incurred by the gross weight of the shipment. When the resulting figure is multiplied by the weight of the merchandise alone (net weight), the cost of shipping packaging materials is effectively eliminated from the deduction to be made from USP. The result would be to decrease or possibly eliminate any existing dumping margin.

Commerce apparently contends that ocean-freight expenses incident to bringing the merchandise to the United States should be calculated by subtracting the entire shipping expense from USP. By including the costs associated with shipping packaging in the calculation of United States Price, Commerce's approach is consistent with the statutory requirement that "costs, charges, and expenses ... incident to bringing the merchandise from the place of shipment in the country of exportation to the place of delivery in the United States" be deducted from USP. The Court agrees and holds that Commerce's rejection of Kejriwal's ocean-freight shipping data is in accordance with law and supported by substantial evidence on the record.

### 2. UNDERSTATED TAX REFUNDS

■ Kejriwal contends that Commerce improperly failed to deduct the Indian Central States tax, Freight Equalization Fund levy, and Turnover tax from constructed value. Commerce concedes the necessity of a remand to correct this error. *See Serampore Indus. Pvt. Ltd. v. United States*, 12 CIT ——, 696 F.Supp. 665 (1988) (*Serampore II*); *Serampore Indus. Pvt. Ltd. v. United States*, 11 CIT 866, 675 F.Supp. 1354 (1987) (*Serampore I*).

### 3. CIRCUMSTANCE OF SALE ADJUSTMENT

The Cash Compensatory Support (CCS) program is an Indian government plan which refunds certain domestic taxes paid on items subsequently exported. Kejriwal argues that if Commerce determines on remand that the CCS payment Kejriwal received as a rebate of domestic taxes paid to the Indian government was in excess of taxes Kejriwal actually paid, Commerce must deduct the entire amount, including the excess, from foreign-market value as a circumstance of sale adjustment under 19 U.S.C. § 1677b(a)(4)(B) and 19 C.F.R. § 353.15.

■ Commerce and the defendant-intervenors argue that Kejriwal is precluded from raising this issue because it was not raised at the administrative level. Exhaustion of administrative remedies is an absolute requirement for a party seeking relief before this court in classification actions, with a limited exception for preimportation classification rulings. *Alhambra Foundry Co. v. United States*, 12 CIT ——, 685 F.Supp. 1252, 1255 (1988) (*Alhambra I*). In trade cases, the court may, in some circumstances, exercise its discretion and address an issue not raised before the agency. *Id.* at ——, 685 F.Supp. at 1256 (citing *Rhone Poulenc, S.A. v. United States*, 7 CIT 133, 135, 583 F.Supp. 607, 610 (1984)).

■ In the preliminary determination, Commerce increased USP by the full amount of the CCS payment Kejriwal reported. Prior to the final determination, however, Commerce reduced the amount of the CCS payment and subtracted that lesser amount from constructed value. Kejriwal claims that it should not be barred by the exhaustion doctrine because it had no notice of the reduction in the CCS payment Commerce considered between the preliminary and the final determinations. Kejriwal did not waive this objection regarding the possibility of an excess CCS payment because it had no notice that the question might arise.

Nonetheless, the Court will not address the merits of Kejriwal's claim at this time. According to Kejriwal:

this is an alternative claim which becomes relevant *only if* [Commerce] does not deduct from raw material costs the full 5% CCS for heavy castings and the full 10% for light castings ... [T]his issue will not even arise, and will only arise if [Commece] *in*correctly calculates the tax incidence to be less than the CCS received.

Plaintiff's Reply To Defendant's And Defendant–Intervenors' Memorandums In Partial Opposition to Plaintiff's Motion For Judgment On The Agency Record, 4–5. Kejriwal thus admits that its argument will become relevant only if Commerce finds that the CCS payment exceeded the taxes paid and also fails to deduct the entire payment in a circumstance of sale adjustment. Commerce may find, however, that the CCS payment did not exceed the taxes paid, which would eliminate Kejriwal's objection.

On remand, Commerce also may reduce foreign-market value as a circumstance of sale adjustment as it has done in the past. *See, e.g., Final Determination of Sales at Less Than Fair Value; Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, From Japan,* 52 Fed.Reg. 30,700, 30,706 (August 17, 1987), (relying on *Cellular Mobile Telephones and Subassemblies from Japan,* 50 Fed.Reg. 45,-447, 45,460 (Oct. 31, 1985); *Spun Acrylic Yarn from Italy,* 50 Fed.Reg. 35,849, 35,-851 (Sept. 4, 1985)). The Court does not decide whether an excessive tax rebate is properly included in a circumstance of sale adjustment. If Commerce does include the excess payment in such an adjustment, and an objection is not raised by one of the parties, Kejriwal's argument would be rendered moot.

If, after the remand results are published, Kejriwal finds errors in Commerce's methodology or that the results are not supported by substantial evidence on the record, it may seek review under 28 U.S.C. § 1581(c). *See generally Sharp Elecs. Corp. v. United States,* 13 CIT ——, 720 F.Supp. 1014, 1016–17 (1989), *reh'g denied Sharp Elecs. Corp. v. United States,* 14 CIT ——, 729 F.Supp. 1354 (1990) (declining to consider premature arguments).

## 4. UNDERSTATED IPRS PAYMENTS

█ Under the International Price Reimbursement Scheme, the Indian government compensates Indian producers for their higher than world-market cost for domestic pig iron. *See Alhambra I,* 12 CIT at ——, 685 F.Supp. at 1255. Pursuant to 19 U.S.C. § 1677b(e)(1), Commerce deducted Kejriwal's IPRS payment in its calculation of constructed value. Kejriwal argues that Commerce improperly understated its IPRS payment thereby inflating constructed value.

Commerce counters that not all of the IPRS payments Kejriwal reported were received for raw materials purchased during the investigation period. Therefore, Commerce excluded those IPRS payments and raw materials purchases made outside the investigation period from its calculation of constructed value. In its reply brief, Kejriwal does not dispute the propriety of this exclusion. *See* Plaintiff's Reply at 11–12.

Nevertheless, Kejriwal claims that the tonnage figure Commerce used to calculate IPRS payments was greater than the tonnage figure used to calculate the cost of raw materials purchased. Kejriwal asserts that Commerce divided its total IPRS payments by the larger tonnage figure thereby understating the IPRS payment on a per-ton basis. Commerce's use of the higher tonnage figure appears to indicate that IPRS payments were received for a greater amount of raw material than the total amount of raw materials Kejriwal claims to have purchased for the production of castings. The Court is unclear how Commerce arrived at this higher figure when it allegedly excluded purchases of raw materials from the tonnage data Kejriwal submitted. Upon remand, Commerce must either explain more fully how it arrived at the figures used or, if Commerce determines that its methodology was incorrect, recalculate IPRS payments and fully explain why its

new methodology is in accordance with law and supported by substantial evidence on the record.

## 5. DOUBLE–COUNTING INTEREST EXPENSES

■ Kejriwal argues and the defendant agrees that Commerce incorrectly double-counted interest expenses to be added to foreign market value as circumstance of sale adjustments. Upon remand, Commerce is directed to correct this error.

The parties disagree as to how this recalculation will affect Kejriwal. At this juncture, the parties are engaging in an academic debate. After the remand results are known, they will be subject to challenge. If Kejriwal remains unsatisfied, it may seek judicial review at that time.

## 6. ADJUSTMENT OF USP FOR 1984 COUNTERVAILING DUTIES

While this final dumping determination, covering the period between December 1, 1984 and May 31, 1985, was on remand, Commerce published the amended final results of a countervailing duty (CVD) administrative review covering the 1984 calendar year which found a countervailable subsidy on certain iron-metal castings from India. *See Certain Iron–Metal Castings From India: Amendment to Final Results of Countervailing Duty Administrative Review in Accordance with Decision Upon Remand,* 53 Fed.Reg. 37,014, 37,014 (September 23, 1988). *See also Alhambra I,* 12 CIT ——, 685 F.Supp. 1252 (1988) (remanding dumping determination). According to Kejriwal, this administrative review "assessed" a CVD against its December 1984 sales and Commerce should have added that amount to Kejriwal's United States Price in the dumping determination as required by 19 U.S.C. § 1677a(d)(1)(D) (1988). This provision states that United States Price "shall be adjusted by being ... increased by ... the amount of any countervailing duty *imposed on the merchandise....*" *Id.* (emphasis added).

Kejriwal made two sales of castings in December of 1984. Conf.R. 439A. In both of those sales, the merchandise was not exported until 1985. Conf.R. 1326–27A.

Following a final affirmative Commission determination or an administrative review in a CVD investigation, Commerce publishes a CVD order which requires the deposit of duties estimated to be necessary to offset the countervailable subsidy on the merchandise. 19 U.S.C. §§ 1671e(a)(4), 1675(a)(1) (1988). If the importer does not seek administrative review under 19 U.S.C. § 1675, duties are assessed at the estimated rate upon the one year anniversary of the CVD order. 19 C.F.R. § 355.10(d) (1988). If an administrative review is conducted, duties are assessed on merchandise entered during the review period at the rate established in the review determination. That rate is then used as the estimated rate for merchandise entered during the following 12 months. *British Steel Corp. v. United States,* 10 CIT 661, 662 n. 1, 647 F.Supp. 928, 929 n. 1 (1986); *see also, Zenith Radio Corp. v. United States,* 1 Fed. Cir. (T) 74, 75, 710 F.2d 806, 808 (1983) (discussing administrative review of dumping determinations).

■ A CVD is "imposed" when it is assessed. *Serampore I,* 10 CIT at 873, 675 F.Supp. at 1360. Kejriwal argues that the duties were assessed against merchandise it sold during December of 1984 within the meaning of 19 U.S.C. § 1677a(d)(1)(D) and *Serampore I* because on September 23, 1988 Commerce announced that

> The Department will instruct the Customs Service to assess countervailing duties of 7.31 percent of f.o.b. invoice price on all shipments of the subject merchandise exported on or after January 1, 1984 and on or before December 31, 1984.

Plaintiff's Brief In Support Of Motion For Judgment Upon The Agency Record, 41 (citing 53 Fed.Reg. at 37,014).

■ Commerce argues that under the statutory scheme, Kejriwal's sales from December of 1984, which entered the United States in 1985, were subject only to an order to collect estimated duties for the 1985 administrative review period. Defendant's Memorandum In Partial Opposition

To Plaintiff's Motion For Judgment Upon The Agency Record, 33 nn. 36, 35.

The Court agrees. Those estimated duties would not be assessed until the end of the next review period or the completion of an administrative review. *See Zenith* 1 Fed.Cir. (T) at 75, 710 F.2d at 808, *NTN Bearing Corp. of Am. v. United States*, 12 CIT ——, 701 F.Supp. 226, 227–28 (1988). Consequently, no countervailing duties were "imposed" within the meaning of 19 U.S.C. § 1677a(d)(1)(D) against Kejriwal's 1985 entries as a result of the 1984 countervailing duty administrative review. *See Serampore I*, 10 CIT at 870–73, 675 F.Supp. at 1358–60.

Moreover, the Court notes that the results of the administrative review expressly assessed duties against merchandise which was *exported* to the United States in 1984; not against merchandise *sold* during 1984. Since Kejriwal's December 1984 sales were not shipped, and did not enter the United States until 1985, they were specifically excluded from the assessment of countervailing duties under that order. Therefore, Commerce acted in accordance with law when it declined to add the CVD to United States Price for purposes of the antidumping investigation.

## CONCLUSION

The final affirmative dumping determination is remanded so that Commerce may correct erroneous data as conceded by the government. On remand, Commerce must either explain more fully how it arrived at the tonnage figures it used to calculate IPRS payments or, if Commerce determines that its methodology was incorrect, recalculate IPRS payments and fully explain why its new methodology is in accordance with law and supported by substantial evidence on the record. The decision by Commerce to calculate ocean-freight shipping expenses based on net-weight data was in accordance with law and supported by substantial evidence on the record. The Court also affirms Commerce's decision not to add countervailing duties from the administrative review of 1984 entries because those duties had not been assessed against

Kejriwal's sales which entered the United States in 1985.

Commerce shall file its remand determination with the Court within 30 days. Plaintiff and the defendant-intervenors are granted 20 days to file comments on the remand determination. Commerce may respond to any comments filed within 10 days.