**KEJRIWAL IRON AND STEEL WORKS, LTD., Plaintiff,**

v.

**UNITED STATES, Defendant,**

and

**Alhambra Foundry Co., et al., Defendants–Intervenors.**

Court No. 89–04–00172.

United States Court of
International Trade.

Oct. 11, 1990.

Kaplan Russin & Vecchi, Dennis James, Jr. and Kathleen F. Patterson, Washington, D.C., for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Platte B. Moring, III, Office of Chief

---

Counsel for Import Admin., U.S. Dept. of Commerce, Andrea Fekkes Dynes, Washington, D.C., for defendant.

Collier Shannon & Scott, Paul C. Rosenthal and Carol A. Mitchell, Washington, D.C., for defendants-intervenors.

DiCARLO, Judge:

Defendant-intervenors challenge the amended results of the remand ordered in *Kejriwal Iron & Steel Works, Ltd. v. United States,* 14 CIT ——, 729 F.Supp. 1365 (1990) (*Kejriwal I*). In *Kejriwal I,* the United States Department of Commerce, International Trade Administration was directed to: 1) correct computer input errors, 2) correct its failure to deduct several Indian taxes from the calculation of constructed value, 3) either explain how it arrived at the tonnage figures used to calculate the rebate provided under India's International Price Reimbursement Scheme (IPRS) or recalculate the rebate and explain why its new methodology is in accordance with law and supported by substantial evidence on the record, and 4) correct the double counting of interest expenses in the calculation of foreign market value. Upon review of the amended remand results, the Court finds them to be in accordance with law and supported by substantial evidence.

## BACKGROUND

Kejriwal challenged an antidumping order against imports of iron construction castings it manufactured in India. *See Certain Iron Construction Castings From India: Amendment to Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order in Accordance With Decision Upon Remand,* 54 Fed.Reg. 11,989 (March 23, 1989) (finding a 2.93 percent margin for Kejriwal). Initially, Commerce found Kejriwal had a *de minimis* margin and excluded it from the antidumping duty order. As a result of the remands ordered in *Alhambra Foundry Co. v. United States,* 12 CIT ——, 685 F.Supp. 1252 (1988) and *Alhambra Foundry Co. v. United States,* 12 CIT ——, 701 F.Supp. 221 (1988), Kejriwal was included in the amended antidumping duty order.

## DISCUSSION

In the amended remand results, Commerce concluded that Kejriwal has a *de minimis* margin. Plaintiff has raised no objection to this conclusion. Defendant-intervenors raise several objections to the recalculation of the IPRS rebates. The IPRS is an Indian governmental program to compensate Indian producers for their higher than world-market cost for domestic pig-iron. *See Alhambra,* 12 CIT at ——, 685 F.Supp. at 1255. No objections have been raised regarding the other issues Commerce was directed to reconsider on remand. Accordingly, those aspects of the remand results are affirmed.

In *Kejriwal I,* plaintiff argued Commerce improperly understated its IPRS payment in its calculation of constructed value, thereby inflating the dumping margin. *Kejriwal I,* 14 CIT at ——, 729 F.Supp. at 1369. Commerce countered that the adjustment to constructed value for rebates was limited to rebates earned during the period under investigation. *Id.* Commerce's explanation appeared to create a conflict between the tonnage data it used to calculate IPRS rebates and its tonnage data for total raw materials purchased. It appeared that IPRS rebates were paid for an amount of pig-iron greater than Kejriwal claimed to have purchased. Consequently, the Court ordered Commerce to either explain why its calculation was in accordance with law and supported by substantial evidence or to recalculate the IPRS payments and explain why its new methodology is in accordance with law and supported by substantial evidence. *Id.* at ——, 729 F.Supp. at 1369–70.

■ The difference between the amount of pig-iron purchased and the amount earning rebates is explained by the fact that data for pig-iron purchased was based on total casting production while the rebate data was based on exported castings. Production and export statistics differ because castings may be exported from inventory or not exported. The tonnage figure Commerce used came from a verified IPRS payment summary document. *See* Conf.R.

Kejriwal 44A, 46A (Exhibit 11). According to Commerce, the summary document is "the most appropriate basis for calculating the IPRS rebate rate, since it relates actual IPRS rebates to the pig-iron purchases for which they were claimed." Amended Remand Results, at 15. This reasoning and the evidence in the record is sufficient to account for the difference between the figures used to calculate the IPRS payments and production costs.

Nevertheless, Commerce determined it had incorrectly calculated the IPRS rebate. The rebate is only earned on pig-iron purchased from domestic suppliers and then exported. Commerce, however, calculated the rebate for all the pig-iron purchased to produce castings for export. This methodology failed to account for pig-iron wasted in the production process and, therefore, not exported. To correct this error, Commerce adjusted the IPRS rebate to equal the rebate earned on exported pig-iron. According to Commerce, this figure is properly treated as an offset to material costs.

Defendant-intervenors object that the adjustment results in an unverified derived figure for export tonnage that is unsupported by any evidence in the record. The production input tonnage data was taken from a verified IPRS Summary Sheet. *See* Kejriwal Verification Exhibit 11 (Conf.R. 46A). The amount of wastage is supported by substantial evidence in the record. *See* Conf.R. 456A, 778A. Consequently, the Court finds Commerce's calculation of the IPRS rebate to be in accordance with law and supported by substantial evidence.

In addition, the Court notes defendant-intervenors' objection is directed at an adjustment reducing the IPRS rebate and increasing constructed value. The adjustment, therefore, favors the defendant-intervenors by increasing the dumping margin.

■ Defendant-intervenors raise further objections based on numerous examples of calculations using tonnage data that are allegedly inconsistent with the export tonnage data used to calculate IPRS rebates. The only change in the IPRS portion of the constructed value calculation made during the remand was the adjustment for wastage in the production process. Therefore, the "inconsistencies" defendant-intervenors now raise were present prior to the conclusion of the remand and could have been raised before the administrative agency. As defendant-intervenors have failed to exhaust their administrative remedies, these objections are untimely. *See Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191, *reh'g denied* 1990 WL 32806, 1990 U.S.App.LEXIS 6258 (Fed.Cir.1990); *Sharp Corp. v. United States*, 837 F.2d 1058, 1062 (Fed.Cir.1988).

Without ruling on these arguments, but for purposes of example, one of defendant-intervenors' arguments is that the constructed value calculation is flawed because the export tonnage data Commerce used to calculate the per-ton IPRS rebate rate is not consistent with the tonnage data used to calculate the rebate Kejriwal received under India's Cash Compensatory Support (CCS) program. Through the CCS program, the Indian government refunds certain domestic taxes paid on items subsequently exported. *Kejriwal I*, 14 CIT at ——, 729 F.Supp. at 1368.

According to defendant-intervenors, both calculations relate to the same merchandise and, therefore, both calculations should have used the same tonnage data. The plaintiff justifies the difference by explaining that, unlike the IPRS rebate, the CCS rebate was calculated from data for sales rather than exports. According to plaintiff, the result would be "virtually the same" had the calculation been done using export data. Plaintiff's Reply to Defendant–Intervenors' Comments on the Commerce Department's Final Remand Results, 8. The government agrees adding that "the basis of the [CCS] rebate is known at the time of sale, does not vary between sale and export, and is based upon the sales price...." Defendant's Memorandum In Response to Plaintiff's and Defendant–Intervenors' Comments on the Final Remand Results, 14. The government concludes "[i]t would have been inappropriate to allocate either the IPRS or the CCS rebate upon the basis of a tonnage which was not

the basis upon which the rebate was given." *Id.* at 15.

The explanations for the use of differing data do not appear to be unreasonable. Nevertheless, as stated above, these objections have not been raised in a timely manner. Accordingly, the Court does not pass on their merits.

Defendant-intervenors raise two final arguments that are also untimely. First, the remand calculation of the IPRS rebate rate is improper because it was based on shipments rather than sales, and second, Commerce should have adjusted constructed value to account for variations in the price of castings. Despite the fact that these issues were present during the remand and defendant-intervenor had the opportunity to raise them, defendant-intervenor failed to raise them before Commerce. Accordingly, the Court will not consider their merits.

## CONCLUSION

Upon review of the amended remand results, the Court finds Commerce's determination that Kejriwal had a *de minimis* dumping margin is in accordance with law and supported by substantial evidence on the record. Accordingly, the amended remand results are affirmed and the action is dismissed.