SKF USA INC. AND SKF (U.K.) LTD., PLAINTIFFS *v.* UNITED STATES, DEFENDANT, AND TORRINGTON CO. AND FEDERAL-MOGUL CORP., DEFENDANT-INTERVENORS

Court No. 92–07–00515

(Dated January 31, 1995)

*Howrey & Simon (Herbert C. Shelley, Alice A. Kipel, Thomas J. Trendl* and *Juliana M. Cofrancesco)* for plaintiffs.

*Frank W. Hunger,* Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice *(Marc E. Montalbine);* of counsel: *Stephen J. Claeys, Dean A. Pinkert, Stacy J. Ettinger* and *Thomas H. Fine,* Attorneys, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, for defendant.

*Stewart and Stewart (Eugene L. Stewart, Terence P. Stewart, Wesley K. Caine* and *Myron A. Brilliant)* for defendant-intervenor, The Torrington Company.

*Frederick L. Ikenson, P.C. (Frederick L. Ikenson, Larry Hampel, J. Eric Nissley* and *Joseph A. Perna, V)* for defendant-intervenor, Federal-Mogul Corporation.

## OPINION

TSOUCALAS, *Judge:* Plaintiffs, SKF USA Inc. and SKF (U.K.) Limited ("SKF"), commenced this action challenging certain aspects of the Department of Commerce, International Trade Administration's ("Commerce" or "ITA") final results of its administrative review concerning antifriction bearings (other than tapered roller bearings) ("AFB") and parts thereof from the United Kingdom. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; et al.; Final Results of Antidumping Duty Administrative Reviews ("Final Results"),* 57 Fed. Reg. 28,360 (June 24, 1992).

Specifically, plaintiffs contest Commerce's (1) imposition of a difference in merchandising adjustment cap ("difmer") as a test for identifying similar merchandise; and (2) disregarding plaintiffs' claim that U.S. inland insurance expense was insignificant and application of the reported insurance rate to U.S. price ("USP") when the rate reported was based upon inventory value, thereby resorting to best information available ("BIA").

## BACKGROUND

On May 15, 1989, Commerce published antidumping duty orders on ball bearings, cylindrical roller bearings and spherical plain bearings and parts thereof. *Antidumping Duty Orders: Ball Bearings, Cylindrical Roller Bearings, and Spherical Plain Bearings and Parts Thereof From the Federal Republic of Germany,* 54 Fed. Reg. 20,900 (May 15, 1989). On June 28, 1991, July 19, 1991 and August 14, 1991, Commerce initiated administrative reviews with respect to various manufacturers and exporters from France, Germany, Italy, Japan, Romania, Singapore, Sweden, Thailand and the United Kingdom, including SKF (U.K.) Limited, for the period May 1, 1990 through April 30, 1991. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany, France, Italy, Japan, Romania, Singapore, Sweden, Thailand, and the United Kingdom; Initiation of Antidumping Administrative Reviews,* 56 Fed. Reg. 29,618 (June 28, 1991); *Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 56 Fed. Reg. 33,251 (July 19, 1991); *Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 56 Fed. Reg. 40,305 (August 14, 1991).

On March 31, 1992, Commerce published the preliminary results of its second administrative reviews. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; Preliminary Results of Antidumping Duty Administrative Reviews and Partial Termination of Administrative Reviews,* 57 Fed. Reg. 10,859 (March 31, 1992).

On June 24, 1992, Commerce published one joint final determination for the nine administrative reviews. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; et al.; Final Results of Antidumping Duty Administrative Reviews,* 57 Fed. Reg. 28,360 (June 24, 1992).

On July 24, 1992, SKF filed its summons in this case, challenging the final results with respect to the United Kingdom.

## DISCUSSION

This Court must uphold final results of an ITA administrative review unless the ITA determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is defined as "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938); *Alhambra Foundry Co. v. United States,* 12 CIT 343, 345, 685 F. Supp. 1252, 1255 (1988). It is "not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record." *Timken Co. v. United States,* 12 CIT 955, 962, 699 F. Supp. 300, 306 (1988), *aff'd,* 894 F.2d 385 (Fed Cir. 1990).

### 1. *Difference in Merchandise Adjustment Cap:*

SKF challenges Commerce's use of a 20% difference in merchandise adjustment cap, in addition to a family model match methodology which takes eight physical criteria into account, to determine what constitutes similar merchandise. According to SKF, Commerce's institution of a difmer cap, after a hearing which followed the second review preliminary results, is a last-minute change which undermines the ability of parties to predict Commerce's actions and to alter their pricing behavior. SKF also alleges that Commerce failed to sufficiently explain its change in methodology. In sum, SKF challenges Commerce's imposition of the difmer cap in the second review where there was no difmer cap in the first review. *Brief in Support of Plaintiffs'. Motion for Judgment Upon the Agency Record ("SKF's Brief")* at 12–22.

Commerce argues that the application of the difmer cap was a proper exercise of its discretion and was meant to ensure that a reasonable comparison of merchandise would be made. Commerce asserts that it has broad discretion in its selection of what constitutes "similar" merchandise and may refine its methodology in succeeding reviews. Since the two tests employed in the final determination of the second review are complimentary, the cap minimizes the effects of distortions where there is a difference in the variable costs of production and there are no circumstances in this case to warrant disregarding the cap, Commerce claims its decision was in accordance with law. Commerce states that as this is only the second review, SKF cannot claim a significant reliance on the fact that Commerce had not applied the 20% difmer cap in the original investigation or in the first administrative review. *Defendant's*

*Memorandum in Opposition to Plaintiffs' Motion for Judgment Upon the Agency Record ("Defendant's Brief")* at 5–16.

Defendant-intervenor The Torrington Company ("Torrington") agrees with SKF that the difmer cap should not be applied and additionally, contests the use of the family model match methodology. Torrington alleges that Commerce's definition of "similar merchandise" was impermissibly narrow and limiting. *Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Judgment on the Agency Record ("Torrington's Brief")* at 4–12.

Defendant-intervenor Federal-Mogul Corporation ("Federal-Mogul") opposes SKF on grounds that SKF failed to show that the use of the difmer cap had any effect on the margin calculations. *Opposition of Federal-Mogul Corporation, Defendant-Intervenor, to Plaintiffs' Motion for Judgment Upon the Agency Record ("Federal-Mogul's Brief")* at 8–9.

When identical merchandise is not available in the home market for comparison with the merchandise sold to the United States, Commerce must select "similar" comparison merchandise based upon the physical characteristics of the merchandise being compared. 19 U.S.C. § 1677(16) (1988).[1] Commerce has been granted broad discretion to devise a methodology for determining what constitutes "similar" merchandise. *See Smith-Corona Group v. United States,* 713 F.2d 1568, 1571 (Fed. Cir. 1983), *cert. denied,* 465 U.S. 1022 (1984).

An accurate investigation requires that the merchandise used in the comparison be as similar as possible. Furthermore, there is a statutory preference for comparison of most similar, if not identical merchandise for the purpose of foreign market value ("FMV") calculations. 19 U.S.C. § 1677(16); *see Timken Co. v. United States ("Timken I"),* 10 CIT 86, 96, 630 F. Supp. 1327, 1336 (1986). Undoubtedly, Commerce's fundamental objective in an antidumping investigation is to compare the United States price of imported merchandise with the value of "such or similar merchandise" sold in the foreign market. *Timken I,* 10 CIT at 95, 630 F. Supp. at 1336.

Thus, contrary to the assertion of Torrington, the statute does not require Commerce to use a methodology that identifies the greatest number of matches of similar merchandise.

---

[1] 19 U.S.C. § 1677(16) (1988) provides:

The term "such or similar merchandise" means merchandise in the first of the following categories in respect of which a determination for the purpose of part II of this subtitle can be satisfactorily made:

(A) The merchandise which is the subject of an investigation and other merchandise which is identical in physical characteristics with, and was produced in the same country by the same person as, that merchandise.

(B) Merchandise—

    (i) produced in the same country and by the same person as the merchandise which is the subject of the investigation,

    (ii) like that merchandise in component material or materials and in the purposes for which used, and

    (iii) approximately equal in commercial value to that merchandise.

(C) Merchandise—

    (i) produced in the same country and by the same person and of the same general class or kind as the merchandise which is the subject of the investigation,

    (ii) like that merchandise in the purposes for which used, and

    (iii) which the administering authority determines may reasonably be compared with that merchandise.

Further, when comparing merchandise which is similar, 19 U.S.C. § 1677b(a)(4)(C) (1988) directs Commerce to adjust foreign market value for differences in merchandise being compared.

In this administrative review, Commerce determined what constituted "similar merchandise" for purposes of comparing U.S. and foreign market sales by grouping bearings into families based upon eight defined physical characteristics. Commerce also employed a 20% difmer cap so that bearings having a greater than 20% difference in their variable costs of manufacture would not be treated as "similar." *Final Results,* 57 Fed. Reg. at 28,364–67.

This Court finds that Commerce's action was within the broad discretion it is granted to determine "similar merchandise". *See SKF USA Inc. and SKF GmbH v. United States ("SKF USA Inc. and SKF GmbH"),* 19 CIT 79, 81–83, Slip Op. 95–8 at 5–9 (January 25, 1995); *see SKF USA Inc. and SKF Industrie, S.p.A. v. United States ("SKF USA Inc."),* 19 CIT 54, 56–58, Slip Op. 95–6 at 5–9 (January 20, 1995). Its action on this issue was in accordance with law and supported by substantial evidence and is hereby affirmed.

## 2. *U.S. Inland Insurance Expense Adjustment:*

SKF contests Commerce's adjustment of USP for U.S. inland insurance expense. First, SKF claims that the expense was insignificant and should therefore have been disregarded, pursuant to 19 C.F.R. § 353.59(a) (1992). SKF asserts its U.S. inland insurance rate to be well within the guideline provided in 19 C.F.R. § 353.59(a). Second, SKF asserts Commerce inappropriately applied BIA. SKF states it omitted the requested information from the computer tape because it considered it insignificant, but reported the information in its Section B narrative response. SKF states Commerce unreasonably resorted to BIA because Commerce accepted SKF's reporting both in the first review and in the preliminary results of the second review and did not request SKF to supplement or correct its reporting. Finally, SKF alternatively argues that if the adjustment was warranted, Commerce used the incorrect information by applying the insurance rate to unit price even though it had been reported as a percentage of inventory value. *SKF's Brief* at 22–26.

SKF requests a remand with instructions to Commerce to either disregard SKF's U.S. inland insurance or apply its rate to the reported base of inventory value. *Id.*

Commerce's position is that the adjustment was reasonable and that its use and choice of BIA were reasonable as well, since SKF failed to provide the information requested. Commerce asserts it alone has the discretionary authority to disregard insignificant adjustments pursuant to 19 C.F.R. § 353.59 (a) and, as there was clear evidence that inland insurance expenses existed, Commerce properly adjusted for them. Commerce also claims its use of BIA was appropriate since it requested that SKF report the information under appropriately labeled variables.

Although SKF did report the amount of inland insurance expense in its narrative response, it specifically refused to include the information in its computer tapes. Commerce asserts such non-compliance justifies the use of BIA and its choice of BIA (the U.S. inland insurance rate reported in SKF's narrative submission applied to unit prices less billing adjustments) was reasonable. *Defendant's Brief* at 16–20.

Defendant-intervenors Torrington and Federal-Mogul echo the arguments made by Commerce, pointing out that SKF had five months in which to correct the submitted information. *Torrington's Brief* at 12–17; *Federal-Mogul's Brief* at 4–8.

19 U.S.C. § 1677f–1(a) (1988) provides:

> For the purpose of determining United States price or foreign market value under sections 1677a and 1677b of this title, and for purposes of carrying out annual reviews under section 1675 of this title, the administering authority *may*—
>
> \*        \*        \*        \*        \*        \*        \*
>
> (2) decline to take into account adjustments which are insignificant in relation to the price or value of the merchandise.

(Emphasis added.)

19 C.F.R. § 353.59(a) states:

> The Secretary *may* disregard adjustments to foreign market value which are insignificant. *Ordinarily,* the Secretary will disregard individual adjustments having an *ad valorem* effect of less than 0.33 percent, or any group of adjustments having an *ad valorem* effect of less than 1.0 percent, of the foreign market value.

(Emphasis added.)

Thus, the statute provides not only that Commerce is the appropriate authority to determine whether an adjustment is insignificant, but also that it is Commerce that has the discretion to determine whether or not to disregard an insignificant adjustment. This Court therefore finds that it was properly within Commerce's discretion to determine whether the adjustment at issue was insignificant and whether or not to disregard it. *SKF USA Inc. and SKF GmbH,* 19 CIT at 84, Slip Op. 95–8 at 11; *SKF USA Inc.,* 19 CIT at 59, Slip Op. 95–6 at 11.

SKF assigned "zero" to its U.S. inland insurance variable on its computer tape. As a result, Commerce determined that:

> \* \* \* SKF understated the amounts of U.S. inland insurance on its computer tape. We have used the factor provided by SKF [in the narrative portion of its questionnaire response] to calculate U.S. inland freight and deducted this amount from U.S. price for the final results.

*Final Results,* 57 Fed. Reg. at 28,398.

The antidumping statute provides that, whenever a party refuses or is unable to provide information requested in a timely manner and in the form required, Commerce shall use BIA. 19 U.S.C. § 1677e(c) (1988). In this case, however, the record reveals that Commerce had not requested

this information or, more accurately, instructed SKF not to report it on its computer tapes having reported it in its narrative response. Commerce's questionnaire specifically instructed:

> * * * omit any expense item for which the values for all sales are derived by applying the same factor or percentage to the value of another item. For example, if the per-unit direct advertising expense amount is derived for all ESP sales by multiplying the unit price by three percent, do not include the direct advertising variable in your computer listing. Provide the factor or percentage, and the basis to which it should be applied, in your narrative response.

Public Document No. 26, frame 1721, p. 15. U.S. inland insurance expense was exactly such an expense item, reported as a percentage. SKF complied with the instructions, providing in its narrative response the applicable percentage and the item against which the percentage should be multiplied. It is uncontroverted that SKF provided this information in its narrative response. Therefore, this Court finds that Commerce should not have resorted to BIA. See SKF USA Inc. and SKF GmbH, 19 CIT at 85, Slip Op. 95–8 at 12; see SKF USA Inc., 19 CIT at 63, Slip Op. 95–6 at 12.

Having determined that it was not for SKF to decide whether its expense was insignificant or should be disregarded and that Commerce should nonetheless not apply BIA, this Court must determine what information should be applied for SKF's U.S. inland insurance expense. Although SKF reported that the correct base to which SKF's insurance rate should be applied was inventory value, Commerce applied the rate to unit price, calling it BIA. Commerce provided no explanation for choosing price over value or for rejecting the information provided by SKF. Upon consideration of the record, this Court can find no reason that Commerce should have chosen a price base in place of the cost base provided. Therefore, this Court finds that Commerce's application of the U.S. inland insurance rate reported in SKF's narrative submission to the unit price less billing adjustments was not supported by substantial evidence. See SKF USA Inc. and SKF GmbH, 19 CIT at 86, Slip Op. 95–8 at 13; see SKF USA Inc., 19 CIT at 64, Slip Op. 95–6 at 13. This issue is remanded for Commerce to apply SKF's U.S. inland insurance rate to inventory value.

## CONCLUSION

For the foregoing reasons, this case is remanded to Commerce for application of SKF's U.S. inland insurance rate to inventory value. Commerce's determination is affirmed in all other respects. Remand results are due within ninety (90) days of the date this opinion is entered. Any comments or responses are due within thirty (30) days thereafter. Any rebuttal comments are due within fifteen (15) days of the date responses or comments are due.